Bobinson, J.
 

 More than 90 days prior to the
 
 *24
 
 November election, 1924, more than 10 per cent, of the number of electors voting for Governor at the next preceding general election in the county of Paulding petitioned the judge of the court of common pleas to submit to the electors the question of combining the probate court with the common pleas court. The question was submitted and carried at the November election.
 

 At the same election the relator was a candidate for the office of probate judge for a term of four years, beginning February 9, 1925, and was duly elected to that office.
 

 The respondent, William F. Oorbett, is the duly elected, qualified, and acting judge of the court of common pleas of Paulding county, and us such has established in the court of common pleas a probate division, and has assumed and taken jurisdiction of all matters whereof the probate court of Paulding county had jurisdiction by law prior to the general election held on November 4, 1924.
 

 This is an action in.
 
 quo warranto
 
 to oust the respondent from the probate division of the court of common pleas and to induct the relator into the office of probate judge.
 

 The legal question in this case grows out of the difference between the provisions of the Constitution and the provisions of the statutes.
 

 Section 7, Article IV of the 'Constitution of Ohio, provides:
 

 “There shall be established in each county, a probate court, which shall be a court of record, open at all times, and holden by one judge, elected by the electors of the county, who shall hold his office for the term of four years, and shall receive
 
 *25
 
 such compensation, payable out of the county treasury, as shall be provided by law. Whenever ten per centum of the number of the electors voting for Governor at the next preceding election in any county having less than sixty thousand population as determined by the next preceding federal census, shall petition the judge of the court of common pleas of any such county not less than ninety days before any general election for county officers, the judge of the court of common pleas shall submit to the electors of such county the question of combining the probate court with the court of common pleas, and such courts shall be combined and shall be known as the court of common pleas in case a majority of the electors voting upon such question vote in favor of such combination. Notice of such election shall be given in the same manner as for the election of county officers. Elections may be had in the same manner for the separation of such courts, when once combined.”
 

 Section 1604-1 and succeeding sections of the General Code supplement the provisions of Section 7, Article I‘V of the Constitution, and provide, in addition to the specific requirements of the Constitution, how the signatures to the petition for the submission of the question shall be made; that such petition shall be verified; the time within which and how objections may be made thereto; for an order by the common pleas judge directed to the sheriff to make a proclamation that at the next ensuing general election the question of combining the probate court with the court of common pleas will be submitted; for the journalizing of the order and of the proclamation; how the
 
 *26
 
 ballots shall be piinted, the election conducted, the returns canvassed, and the result certified to the secretary of state, to the judge of the probate court, and to the judge of the court of common pleas; and that the same shall be spread upon the journal of each of such courts.
 

 Section 1604-3, in part, provides:
 

 “If a majority of the votes cast at such an election shall be in favor of combining said courts, such courts shall stand combined and consolidated at the expiration of the term for which the probate judge has been elected in the county wherein such election has been held.”
 

 Section 1604-4 provides, in substance, that when the combination has been effected there shall be established in the court of common pleas a probate division for separately docketing all matters of which the probate court theretofore had jurisdiction, and for the appointment of necessary deputies, clerks and assistants, and for their salaries.
 

 It is the contention of the relator that Section 7, Article IV of the Constitution, is not self-executing; that the combination of the two courts could not be effected without the enactment of statutory machinery for the election, and statutory provision for the manner of combination.
 

 Section 7, Article IV, after providing that a probate court shall be established in each county, and that one judge shall be elected thereto for the term of four years, provides the means whereby any county of less than 60,000 population may relieve itself of the duty of maintaining a separate probate court, designates the per cent, of electors who may invoke, and the manner and time when they may invoke, the action of the judge of the court
 
 *27
 
 of common pleas, and requires such court to submit the question of combining the probate court with the court of common pleas at the next general election, held not less than 90 days thereafter, 'and provides that notice of such election shall be given in the same manner as notice for the election of county officers, and that, if a majority of the electors voting upon the question vote in favor of 'such combination, such courts shall be combined and be known as the court of common pleas.
 

 The provision for the combination is all contained in one sentence; the sentence begins with the word “whenever;” the first part of the sentence relates to the manner in which the action of the judge of the court of common pleas may be invoked and the manner of submission of the question to the electors; the other part of the sentence relates to the effect of a majority of the electors voting in favor of such combination; the two parts of the sentence are connected with the conjunction “and,” so that, not only the grammatical construction, but the text, of the sentence, requires the “whenever,” which is the first word of the sentence, to be read in connection with that portion of it which follows the conjunction “and,” as well as in connection with that portion of it which precedes it, and, so construed, it declares that whenever a majority of the electors voting upon such question vote in favor of such combination such courts shall be combined and shall be known as the court of common pleas.
 

 It is, however, contended, since at the time of the adoption of that portion of the section of the Constitution which relates to the combining of
 
 *28
 
 the probate court with the common pleas court no provision had been made by statute, or by the Constitution, creating or defining the machinery which the judge of the court of common pleas should use in the submission of the question to the electors of the county, that therefore Section 7, Article IV, is not self-executing.
 

 It is equally true that the Constitution fixes the date when the election shall be had by the length of time the petition provided for in the Constitution is filed before a general election. If less than 90 days before any general election, it is plain that the provisions of the Constitution do not impose upon the judge of the court of common pleas the performance of any duty with reference to such election, but, if not less than 90 days before any general election, then a duty is imposed upon such judge with reference to such election; also it will be observed that the Constitution provides that notice of the election shall be given in the same manner as for the election of county officers, and provides not that there shall be a combination upon the majority of the persons voting at such election voting in favor of the combination, but upon a majority of the persons voting upon the question, from all of which it is apparent that it was the intention of the framers of that section of the Constitution that the election should be had at a time when the electors were voting upon questions other than the question of combining the courts, that it should be held at the election at which county officers were elected, and that it should be held at a general election.
 

 
 *29
 
 At the time this provision of Section 7, Article IY of the Constitution, was adopted, there existed, and has existed ever since, complete machinery by statute for conducting the election of county officers and conducting general elections, and, the duty having been imposed by the Constitution upon the judge of the court of common pleas to submit such question to the electors, the power was thereby conferred upon such court to invoke the necessary machinery of the state and county to discharge such duty, and without any additional legislation the power thus conferred, plus the inherent power of the court, was ample to enable such court to require the election officials of the county to place such question upon the ballot in such form as would enable the electors to intelligently express their choice, and to canvass the vote and make return thereof in such manner as the court might direct, and, since the court speaks through its journal, it needed no additional legislation to authorize the common pleas court to journalize the result of such election.
 

 The inherent power of the judge of the court of common pleas, in the absence of additional legislation, was at all times such as to enable him to organize and conduct the combined business of the two courts.
 

 But, assuming that Section 7, Article 3Y of the Constitution, is not self-executing, and required legislation supplemental therieto, providing the machinery for the holding of the election and the combination of the two courts, the necessity for such supplemental legislation does not confer upon the Legislature the power by express enactment
 
 *30
 
 to nullify any of the provisions of the Constitution. If a provision of the Constitution be not self-executing, the failure of the Legislature to enact operating legislation may, and necessarily does, result in the constitutional provision being inoperative, not because of any action of the Legislature, but because of its nonaction. But because the Legislature may by its failure to act wholly defeat the intention of the framers of the Constitution, it does not follow at all that the Legislature may by affirmative action annul or even modify any provision of the Constitution.
 

 In the instant case, the Legislature had enacted operating laws, and when and after those laws went into effect the question whether the provisions of the Constitution were self-executing ceased to be determinative of the question in this case. That the Legislature had the power to provide additional machinery, both for the submission of the question and the combination of the courts, must be conceded, in so far as such additional machinery for the election and combination did not contravene any provision of the Constitution, but the power of the Legislature to contravene the provisions of the Constitution by affirmative action is not different with reference to those provisions that are not self-executing from the power with reference to those that are self-executing.
 

 "When the Constitution provided that “whenever” certain things are done “the judge of the court of common pleas # # * shall submit to the electors * # *
 
 and
 
 such courts shall be combined and shall be known, as the court of common pleas in case a majority of the electors voting upon such question vote in favor of such combina
 
 *31
 
 íion, ’ ’ it provided in effect that whenever the contingency therein named happened such courts should he combined and known as the court of common pleas. The provision of the statute, therefore, that such combination shall not be effective until a date more than four years subsequent to the happening of the contingency, is in contravention of the provision of the Constitution that such courts shall be combined whenever the majority of the electors voting upon such question vote in favor of such combination. If the Legislature by enactment may contravene the provision that it shall take effect upon the happening of a certain event, by an enactment that it shall not take effect for more than four years subsequent thereto, of course it must be conceded that the Legislature may provide that it shall not take effect at all.
 

 We agree with counsel for the relator that it was probably the intention of the Legislature to make the combination take effect only “at the expiration of the term for which the probate judge has been elected,” and that, applied to the present ease, it would be at the expiration of the term for which the relator has been elected. Such provision, however, being in conflict with Section 7, Article IV of the Constitution, is ineffective to change -the date provided in the Constitution for the combination of such courts. Whether Section 7, Article IV, is self-executing or not, in so far as it provides procedure and fixes the times when elections shall be had, and when the combination shall take effect, it is controlling over every provision of the statute.
 

 The effect of the abolition of an office is always to terminate the term of the incumbent, since he
 
 *32
 
 cannot be an officer or incumbent of an office which has ceased to exist, and what has been said as to the incumbent of course is equally applicable to the officer elect.
 

 The office having been created by Constitution of course can be abolished only by the Constitution, and the power to abolish by the Constitution is not limited to an. abolition taking effect immediately, but extends to abolitions taking effect at some future date, or upon the happening of a contingency. The contingency in this case was the majority of the electors duly voting for the combination of the two courts, and the effect of that vote is in no sense neutralized, or the operation of the Constitution stayed, by the fact that at the same election the relator was elected probate judge for a four-year term, since the electors of a county having created the contingency are without power to neutralize the constitutional effect thereof.
 

 The office of probate judge became combined with the office of common pleas judge in Paulding county when it was officially determined that a majority of the electors voting upon that question at the general election held November 4, 1924, voted in favor of such combination.
 

 The demurrer to the petition will be sustained, and the writ denied.
 

 Writ denied.
 

 Marshall, C. J., Jones, Matthias, Day, Allen and Kinkade, JJ., concur.