## MERRYMAN et, v. GORMAN et.

Common Pleas Court, Jefferson County.

No. 43749. Decided August 27, 1953.

James S. Kimble, Steubenville, for plaintiffs.
Bernard T. McCann, Pros. Atty., John E. Irvine, Steubenville, for defendant.

## OPINION

By GRIESINGER, J.

This case was specially assigned for final hearing by agreement of counsel, and is before the Court on the pleadings and evidence.

Plaintiffs pray for a permanent injunction against the defendants, members of the Board of Elections of Jefferson County, Ohio, the clerk and deputy clerk of said Board, prohibiting them from contracting for the purchase of ballots for a special election, from conducting and holding said special election, and from taking any steps whatsoever to hold or conduct such special election.

There is little or no dispute in regard to the facts. The principal question of law revolves about the application and construction of **Sections 3, 7 and 8 of Article 18 of the Ohio Constitution.**

**Section 3 of Article 18** reads as follows:

"Section 3. (Powers.) Municipalities shall have authority to exercise all powers of local self-government and to adopt and enforce within their limits such local police, sanitary and other similar regulations, as are not in conflict with general laws."

**Section 7 of Article 18** reads as follows:

"Section 7. (Home rule.) Any municipality may frame and adopt or amend a charter for its government and may, subject

to the provisions of section 3 of this article, exercise thereunder all powers of local self-government."

**Section 8 of Article 18** reads as follows:

"Section 8. (Submission of question of election of charter commission; approval.) The legislative authority of any city or village may by a two-thirds vote of its members, and upon petition of ten per centum of the electors shall forthwith, provide by ordinance for the submission to the electors, of the question, 'Shall a commission be chosen to frame a charter.' The ordinance providing for the submission of such question shall require that it be submitted to the electors at the next regular municipal election if one shall occur not less than sixty nor more than one hundred and twenty days after its passage; otherwise it shall provide for the submission of the question at a special election to be called and held within the time aforesaid. The ballot containing such question shall bear no party designation, and provision shall be made thereon for the election from the municipality at large of fifteen electors who shall constitute a commission to frame a charter; provided that a majority of the electors voting on such question shall have voted in the affirmative. Any charter so framed shall be submitted to the electors of the municipality at an election to be held at a time fixed by the charter commission and within one year from the date of its election, provision for which shall be made by the legislative authority of the municipality in so far as not prescribed by general law. Not less than thirty days prior to such election the clerk of the municipality shall mail a copy of the proposed charter to each elector whose name appears upon the poll or registration books of the last regular or general election held therein. If such proposed charter is approved by a majority of the electors voting thereon it shall become the charter of such municipality at the time fixed therein."

Pursuant to **Section 8, of Article 18, of the Ohio Constitution,** upon petition of ten percent of the electors of the City of Steubenville, Council, on March 3, 1953, passed Ordinance No. 8173 (Defendants' Exhibit A), which provided, among other things, for the submission to the electors of the question, "Shall a commission be chosen to frame a charter?" Said ordinance provided for the submission of such question to the electors at a special election to be held on May 5, 1953, which was the date of the municipal primary election, which was within the time provided by **Section 8, of Article 18, of the Ohio Constitution,** there being no regular municipal election within the time provided by the said section of the Constitution. The majority of the electors voting at said election

voted affirmatively on said question and also elected a fifteen member commission to write or frame said charter. A proposed charter was framed by said commission and filed with the Clerk of Council on the 20th day of July, 1953, and Council met on the next day, July 21st, 1953, at which time the clerk presented said proposed charter (Plaintiffs' Exhibit No. 1) to the Council. Said charter commission fixed the 15th day of September, 1953, for an election for the approval or disapproval of said proposed municipal charter. Ordinance No. 8230 (Plaintiffs' Exhibit No. 2) to provide for the expense of such election was introduced on the 21st day of July, 1953. This ordinance has not yet been passed by Council.

Subsequently copies of the proposed charter were printed, envelopes with the return address of the Clerk of Council printed thereon were prepared and copies of the charter placed therein, and stickers with the name and address of each elector whose name appears upon the poll or registration book of the last regular or general election held in said municipality were prepared. The stickers were placed upon the envelopes. The envelopes were out of the hands of the Clerk of Council when they were stamped for mailing. There were more than twenty thousand such envelopes. These envelopes were taken by the Clerk to the United States post office at Steubenville, Ohio, and there placed in the mail for delivery to said electors. The Clerk testified that he had no doubt they were the same envelopes and that they contained copies of said charter, and the Court so finds as a question of fact on the testimony.

Thereafter the Board of Elections prepared for said special election for the submission of the proposed charter to the voters of the municipality. Pursuant to §4785-5 GC, the Board of Elections gave public notice of said special election to be held on September 15th, 1953. After said notice the election board, pursuant to §4785-114 GC, received bids and let a contract to the H. C. Cook Printing Company for the printing of the ballots for said special election. There seems to be some question whether a bond was filed by the successful bidder, or if so whether it was an adequate bond. Nevertheless a new bond was filed by the H. C. Cook Printing Company before the contract was let. Ballots were received and on file late in the afternoon of August 12, 1953. Ballots were not posted as required by §4785-115 GC.

This substantially covers the facts as presented by the pleadings and evidence in this case.

In dealing with similar questions our Supreme Court on more than one occasion has pointed out that the Court in construing the right of an initiative or a referendum as pro-

vided in the Constitution should do so with the idea of permitting rather than precluding the exercise of such right by the people.

In **State, ex rel. City of Middletown v City Commission, 140 Oh St 368,** 44 N. E. 2d 459, the first paragraph of the syllabus reads as follows:

"1. The provisions of the state Constitution authorizing and providing the manner of submission of municipal ordinances to a referendum vote should be so construed as to permit rather than preclude the exercise of the right conferred. The object clearly sought to be attained by such provisions should be promoted rather than prevented or obstructed."

On the other hand clear and plain provisions of the law should be complied with. Those who advocate good government would not contend otherwise.

Our Supreme Court, in **Switzer v. State, ex rel. Silvey, 103 Oh St 306,** at **page 319,** 133 N. E. 552, 555, pointed out:

"Courts should well hesitate about denying the people the right to vote to determine whether or not a proposed change of government is or is not wanted by the majority of those voting thereon, but there is still a greater and higher duty devolving upon courts than that of allowing the utmost freedom possible under the Constitution relative to a popular referendum. By the oaths of the judges it is made their special obligation to support the Constitution according to the best of their understanding and ability. Finally, no greater harm can come to stable popular government than to easily and freely disregard the plain provisions of our Constitutions touching any and all changes and amendments in our government, whether they be municipal, state, or federal."

At the beginning of the trial of this case the defendants, through their counsel, raised the question of jurisdiction of the Court to grant an injunction to prevent a special election as prayed for by the plaintiffs in this case.

This question was presented to the Court in the case of **City of Cincinnati v. Hillenbrand, 103 Oh St 286,** at **page 294,** 133 N. E. 556, 558, the Court said:

" 'This court has no authority to pronounce an opinion, a judgment or a decree upon a mere moot question as to whether a proposed law will conflict with the Constitution, if it shall be enacted by the General Assembly, or be adopted by the people.' There is no doubt concerning that proposition. However, the contention here not only involves the validity of proposed legislation, if enacted, and as to this injunction will not lie, but presents the question whether those desiring to initiate certain municipal legislation have complied with

preliminary prerequisites necessary to be fulfilled before an initiative ordinance, valid or invalid, may be submitted to the electors. Such preliminary steps are specifically prescribed by statute. * * *

"The petition in this case avers that the board of deputy supervisors are about to proceed with the expenditure of a large amount of public money in submitting to the electors an ordinance as to which necessary preliminary steps to authorize such submission have not been taken in accordance with law. There is thus presented a different question than was presented in the case cited, and we are clear in the opinion that, where the board of elections is about to expend the public money in the holding of a special election, for which the necessary preliminary steps have not been taken in accordance with mandatory provisions of the Constitution or the statute, injunction is a proper remedy."

With this test in mind let us examine the plaintiff's petition in the light of the evidence in this case.

Were the necessary preliminary steps taken in order to authorize the submission of the proposed charter to the electors of Steubenville?

In paragraph 3, sub-section A, the plaintiffs complain that Council has not been afforded an opportunity by proper legislation to appropriate necessary funds for mailing to each elector a copy of the proposed charter and could not properly pass legislation to defray the expense of mailing the same at least thirty days prior to September 15, 1953, as is required by **Section 8, of Article 18, of the Ohio Constitution.**

This is a mandatory provision of the Constitution and the local legislative body has no discretion in the matter. It has to make such provision. Although no time is prescribed as to when this should be done, presumably it should be done before the printing and mailing of the copies of the charter to the electors; but this legislation could be passed and payment made after the mailing of said copies of the charter.

A requirement may be directory for one purpose and yet vital and mandatory for another purpose of vice versa.

This provision in the instant case is mandatory as regard to the Council providing funds to pay this expense, but only directory insofar as being a condition to holding such election. The vital and mandatory condition for the purpose of this provision to the holding of the election was that the copies of the charter were mailed by the Clerk to the electors. This condition was complied with.

**Howard v. Shields, 16 Oh St 184.**

Let us consider the complaints in paragraph B of the petition that there will be approximately fifty-five days from the

time of the submission of the charter to Council to the date of the special election and by reason thereof numerous qualified electors will in practical effect be disfranchised because they are in the military service of the United States.

There are specific statutory provisions regulating the procedure concerning voting by absent voters ballots and voting by members of the Armed Forces. These provisions must be complied with. If they have been complied with then no complaint can be made that these necessary steps have not been taken.

The pertinent part of §4785-141 GC, covering this subject reads as follows:

"Armed service absent voter ballots for special elections held on days other than the days on which general or primary elections are held, shall be ready for use as many days before the day on which such special election is held as may be possible under the laws governing the holding of such special elections. On the sixtieth day before the day of each general or primary election, and on the earliest possible day after the sixtieth day before the day of a special election held on a day other than the day on which a general or primary election is held, the clerk of the board of elections shall mail * * *."

All that is required is that the absent voter ballots shall be ready for use as many days before the day of said special election as may be possible. There is no claim by the plaintiffs that the ballots were not made ready at the earliest date possible under the circumstances, and the Court finds as a fact in this case that said absent voter ballots were made ready at the earliest date possible under the circumstances. This is a right governed by the statute, and there has been no violation of any necessary preliminary statutory steps in this regard. 15 O. Jur., pages 330, 331.

Now coming on to paragraph 4 of the plaintiffs' petition it is said that if this election were held on November 3, 1953. instead of September 15, 1953, that considerable money would be saved the taxpayers. This may well be true.

The constitution provides that after the charter commission has finished its work that "Any charter so framed shall be submitted to the electors of the municipality at an election to be held at a time fixed by the charter commission and within one year from the date of its election." Sec. 8, Art. 18, of the Ohio Constitution.

The charter commission thus is the sole authority for fixing the date for the submission of this question to the voters. This they may do even at the additional cost of a special election. Consequently no necessary preliminary step or law has been violated in this connection.

In paragraph 5 the plaintiffs claim that said charter is contrary to the Constitution and the laws of the State of Ohio, in that said charter as proposed contains many provisions in contravention of the general laws of the State of Ohio.

To begin with, as pointed out in City of Cincinnati v. Hillenbrand, supra, the Court has no jurisdiction to enjoin the election on the claim that the charter or some provisions thereof may be unconstitutional or in conflict with the general law of the state. This claim upon the part of the plaintiffs does not raise the question of a preliminary necessary step that must be complied with before the election can be held.

The evidence is that the proposed charter provides for seven councilmen, whereas §3515-20 GC, provides that in cities of more than twenty-five thousand inhabitants there must be nine councilmen.

It is stipulated and agreed by and between counsel that Steubenville, Ohio, is a city of more than twenty-five thousand people.

In addition to the Court's lack of jurisdiction to issue an injunction under such circumstances it is the opinion of the Court that the charter's authority to make such a provision stems directly from the Constitution itself and therefore is a superior authority and supercedes the provisions of the General Code. 28 O. Jur. page 228.

Section 7, of Article 18, provides that the municipality may exercise all power of local self-government subject to the limitations of Section 3 of said Article. The limitation provided in Section 3 of said Article is that local police, sanitary and other similar regulations must not be in conflict with the general law.

The number of councilmen is a matter of local concern and not a police, sanitary or other similar regulation. Therefore, the charter provision would prevail notwithstanding §3515-20 GC.

In the case of State, ex rel. Frankenstein v. Hillenbrand, 100 Oh St 339, in paragraph 1 of the syllabus, 126 N. E. 309 this Court said:

"Section 7, of Article XVIII of the Ohio Constitution, vests in cities adopting a charter the power to prescribe the manner of the selection of their own purely municipal officers."

Judge Robinson stated in 100 Oh St 343, 126 N. E. 310:

"Whatever difficulty this court may have encountered in accurately designating the subjects comprehended in 'local self-government,' as contradistinguished from 'local police, sanitary and other similar regulations,' it has had no difficulty

in arriving at the conclusion that the qualifications, duties, and manner of selection of officers purely municipal come within the purview of the provisions granting a city 'local self-government.'" **Fitzgerald v. Cleveland, 88 Oh St 338,** 103 N. E. 512; **Switzer v. State, ex rel., 103 Oh St 306,** 133 N. E. 552; **State, ex rel. Hackley v. Edmonds, 150 Oh St 203,** 80 N. E. 2d 769.

Again, it is claimed in the brief of the plaintiffs that the proposed charter is in conflict with the general laws of the State of Ohio, namely §486-17a GC, which deals with tenure of office and removal of members of the classified service; §4367 GC, dealing with the appointment of a safety director; and §4380 GC, dealing with suspension hearings by the safety director. Again it may be pointed out that the Court has no jurisdiction to enjoin an election on a proposed charter for the reason that some provision of said proposed charter may be unconstitutional or in conflict with the general laws of the State. Again, this question does not involve a preliminary necessary step which must be taken before the proposed charter is submitted to the vote of the people.

If the claims of the plaintiffs should be correct in these respects it would not invalidate the charter. The proposed charter contains a saving clause in Section 82 thereof, wherein it is provided in substance that if any section or part of a section should be held invalid, it should not impair or effect any other section or part of a section of said charter. In case any portion should be held invalid as being in conflict with the provisions of the General Code, then in such case the provisions of the General Code would prevail.

A further question is raised in paragraph 6 of the plaintiffs' petition to the effect that a complete slate of municipal offices were elected by both the Republican and Democratic parties at the primaries for the offices provided for under the general laws of Ohio.

This raises the question of whether or not the nominee of a political party has fixed or proprietory rights to run at the general election or to hold office when the office has been abolished by provision of law.

In **State, ex rel. Shirley v. Corbett, 113 Oh St 23,** at **pages 31** and 32, 148 N. E. 357, 359, it is said:

"The effect of the abolition of an office is always to terminate the term of the incumbent, since he cannot be an officer or incumbent of an office which has ceased to exist, and what has been said as to the incumbent of course is equally applicable to the officer elect." **32 O. Jur., Sec. 217, pages 1074** and **1075.**

The law provides that a nominee may be deprived of his right to election and holding of office under circumstances similar to those in the instant case. And, hence, this fact would not prevent the submission of the charter to the electorate on September 15, 1953.

Although they were not pleaded, the evidence and brief on behalf of the plaintiffs presented three other questions.

Sec. 4785-114 GC, among other things, provides:

"Each bid for such printing must be accompanied by a bond with at least two sureties * * *."

Any irregularity or failure to comply with this section would not prevent or invalidate the election. Such a violation may affect the contractual relations between the Board and the successful bidder but could not prevent or invalidate any election. 15 O. Jur., Sec. 72, pages 400 and 401.

Also some question was raised by the evidence and brief of the plaintiffs that printed proofs of the ballot were not posted as required by §4785-115 GC. No claim is made that the printed proof and ballot were not correct in all respects. This section is merely directory and for the purpose of enabling the candidate or chairman of the political parties and persons interested to read the proof so that any errors in the proof may be corrected.

The Supreme Court of Ohio brings this to our attention in State, ex rel. Meurer v. Eyrich, 154 Oh St 471, 96 N. E. 2d 412, 413, where it is said:

"The extraordinary remedy of prohibition is not available to prevent the performance of a purely ministerial act."

The plaintiffs contend in their brief that Ordinance No. 8173, passed by Council for the purpose of submitting the question, "Shall a commission be chosen to frame a charter," etc., passed pursuant to Section 8, of Article 18, of the Ohio Constitution, was not read on three different days as required by §4224 GC, and that this would be reason for the granting of the injunction.

The constitutional provision in question provides that "the legislative authority of the city * * * upon petition of ten per centum of the electors shall forthwith provide by ordinance" for the submission of such question to the electors.

This, again, is a mandatory act required of Council, one which it must do "forthwith." This does not mean that Council should wait and read the ordinance on three different days. It orders its passage immediately, without delay. It means the Constitution prevails over §4224 GC.

If plaintiffs are right in their contention it would be necessary for the mayor to approve the ordinance. Yet, this has been held unnecessary under such a constitutional provision. Payne v. State, ex rel., 32 Oh Ap 189, 166 N. E. 907.

A very similar question was before the court in the case of Kumpf v. Village of Delhi, 1 Ohio N. P., N. S., 336, and it was held that such an ordinance need not be read on three different days.

In answer to the question with which we began the Court finds from the pleadings and the evidence in this case that the necessary steps have been taken in order to authorize the submission of the proposed charter to the electors of the City of Steubenville. · Therefore, the prayer of the plaintiffs for an injunction is denied and plaintiffs' petition is dismissed.

Costs are assessed against the plaintiffs.

Special entry.