THE STATE, EX REL. CITIZENS FOR A BETTER
PORTSMOUTH ET AL., *v.* SYDNOR ET AL.

[Cite as *State, ex rel. Citizens for a Better Portsmouth,
v. Sydnor* (1991), 61 Ohio St.3d 49.]

(No. 90–1749—Submitted and decided October 3, 1990—Opinion Announced June 26, 1991.)

*Mark W. Price,* for relators.

*Richard D. Schisler,* City Solicitor, for respondents.

---

*Per Curiam.* We granted the writ to require placement of the proposed charter amendment on the November 6 ballot because we construe Section 166 of the Portsmouth City Charter to require submission of such an issue to the electorate. Section 166 provides in part:

"Amendments to this charter may be submitted to the electors of the City by an affirmative vote of at least all the members elected to Council less two of the Council, and shall be submitted by the Council when a petition signed by ten percentum (10%) of the electors of the City voting at the last general election setting forth any such proposed amendment, shall have been filed with the election authorities in the manner and form prescribed herein for the submission of ordinances by initiative petition. Any such amendment shall be submitted to the electors at the next regular or general election if one shall occur not less than sixty (60) nor more than one hundred and twenty (120) days after passage of the ordinance providing for its submission, otherwise it shall be submitted to the electors as a special election to be called and held within the time aforesaid.  * * * "

We note that Section 166 is essentially the same as Sections 8 and 9 of Article XVIII, Ohio Constitution, which provide authority for Section 166. These sections provide in part:

"[Section] 8.  * * * The ordinance providing for the submission of such question shall require that it be submitted to the electors at the next regular municipal election if one shall occur not less than sixty nor more than one hundred and twenty days after its passage;  otherwise it shall provide for the submission of the question at a special election to be called and held within the time aforesaid.  * * * "

"[Section] 9.  * * * The submission of proposed [charter] amendments to the electors shall be governed by the requirements of section 8 as to the submission of the question of choosing a charter commission * * *."

In *State, ex rel. Blackwell, v. Bachrach* (1957), 166 Ohio St. 301, 2 O.O.2d 219, 143 N.E.2d 127, we held:

"Under the provisions of Section 9, Article XVIII, Constitution of Ohio, an initiative petition to amend a city charter must be submitted to the legislative authority of the city, whereupon it is the duty of such legislative authority to determine the validity of the petition and, where it finds the petition valid, to submit the question to the electors." (*Id.* at paragraph four of the syllabus.)

Respondents argue that the language of Section 166 of the charter requiring a petition to be filed "in a manner and form prescribed herein for the submission of ordinances" authorized them to proceed under Section 15 of the charter, which provides:

"Section 15. Consideration Of Initiated Ordinance By Council. If an initiative petition, or amended petition, be found sufficient by the City Clerk he shall immediately so certify and properly submit the proposed ordinance therein set forth to the Council which shall at once read it and refer it to an appropriate committee, which may be a committee of the whole. Provision may be made for public hearings upon the proposed ordinance before the committee to which it is referred. Thereafter the committee shall report the proposed ordinance to the Council, with its recommendations thereon, not later than sixty days after the date on which it was submitted to the Council by the City Clerk. Upon receiving the proposed ordinance from the committee the Council shall proceed at once to consider it and to take final action thereon within thirty days from the date of such committee report."

We reject respondents' proposed construction. First, Section 166 only requires that the petition be filed in the manner and form required for ordinances. Section 15 involves procedures after filing. Moreover, in *State, ex rel. Polcyn, v. Burkhart* (1973), 33 Ohio St.2d 7, 62 O.O.2d 202, 292 N.E.2d 883, we clarified what we meant by the duty of council to submit a petition to the electorate. That case also involved a complaint for a writ of mandamus to compel council to place a proposed charter amendment on the ballot. Council had refused to certify the petition to the board of elections, alleging certain errors that it said rendered the petition facially invalid. After discussing earlier cases, we held:

"As can be seen from the consistency of result in the foregoing cases, council's power to examine initiative petitions for sufficiency has not been declared by this court to extend beyond matters of form, or 'administrative determinations' concerning the number of valid signatures.  * * *

"* * * *

"* * * * None of the cases decided by this court, which are cited by appellants, should be construed to invest municipal legislative authorities with the power to determine what substantive errors, if any, are grave enough to warrant the withdrawal of a whole issue from the electorate, whether they appear 'on the face' of the petitions or not. That is a judicial function, and Section 9, Article XVIII, does not contemplate that legislative authorities be clothed with that prerogative." *Id.* at 10–11, 62 O.O.2d at 203–204, 292 N.E.2d at 885.

In the instant case, it is clear from the minutes of the council meeting of September 4, 1990, that council tabled the ordinance to put the proposal on the ballot because of objections to its content. Under *Polcyn,* council's authority is limited to approving the form of the petition, not its content. Under *Blackwell,* once the form is approved, council must act to place the proposal on the ballot. In the instant case, the clerk informed council at its August 28, 1990 meeting that the petition contained sufficient signatures. Apparently, council was satisfied with the form of the opinion because at the September 4 meeting the enabling ordinance was proposed and was only tabled after the objections to content were raised.

Finally, we hold that since respondents had the opportunity to adopt an ordinance to place the proposed amendment on the November 6 ballot, a writ of mandamus will issue to compel its submission to the electors on that ballot instead of at a later special election. In *State, ex rel. Jurcisin, v. Cotner* (1984), 10 Ohio St.3d 171, 10 OBR 503, 462 N.E.2d 381, we reached a similar result. In that case, in addition to repeating the requirement of Section 8 of Article XVIII that the issue be submitted to the electorate at the next general election occurring between sixty and one hundred twenty days, the Cleveland Charter stated:

"When ten (10) days and two regular meetings of the Council have passed after the filing of a petition fulfilling the requirements of this section, then the Council shall forthwith provide the ordinance for the submission to the electors of the opposed amendment to this charter."

The Cleveland City Council could have passed the ordinance putting the proposal on the ballot at a second regular meeting that occurred on the tenth day after filing, which would have been just timely to get the proposal on the ballot at the next general election. However, council waited four days until its next regular meeting to pass the ordinance. Relators contended the delay was intentional to cause a special election. We stated:

"We agree. Council was aware of the sixty-day provision in the charter and knew that waiting until March 12, 1984 to enact the ordinance would prevent the issue from being placed on the ballot on May 8, 1984. The charter requires that the ordinance be enacted 'forthwith,' vesting some discretion in council to determine the time for compliance. In the case at bar, council's action in waiting to enact the ordinance until the next regularly scheduled meeting, thereby creating the additional expense and hardship of having a second election within six weeks of one already scheduled, constitutes an abuse of that discretion." *Id.* at 173, 10 OBR at 505, 462 N.E.2d at 382.

We find the principle involved in this case the same as involved in *Jurcisin, supra,* even though the Portsmouth Charter contains no provision similar to

Cleveland's ten-day-two-regular-meeting provision. Here, respondents had the opportunity to enact an ordinance to place the issue on the November 6 ballot. They declined to do so for reasons outside the scope of their authority. Accordingly, we granted the writ.

In their complaint, relators also requested attorney fees under R.C. 733.61. R.C. 733.58 requires the municipal solicitor to bring an action in mandamus to compel a municipal officer or board to perform a duty expressly enjoined by law or ordinance should the officer or board fail to perform the duty. R.C. 733.59 permits a taxpayer to bring the action if the municipal solicitor refuses to do so upon written request. However, R.C. 733.59 also provides:

"No such suit or proceeding shall be entertained by any court until the taxpayer gives security for the cost of the proceeding."

R.C. 733.61 then authorizes the court to grant attorney fees at its discretion. *Billington v. Cotner* (1974), 37 Ohio St.2d 17, 60 O.O.2d 9, 305 N.E.2d 805.

Relators have not given security for costs in this case, as required by R.C. 733.59, yet they request attorney fees under R.C. 733.61. We denied this request because R.C. 733.59 unequivocally withholds jurisdiction to bring a statutory taxpayer action unless such security is given. Since it was not given, the instant action was not a proper statutory taxpayer action. See *State, ex rel. Houghton, v. Pethtel* (1941), 138 Ohio St. 20, 19 O.O. 479, 32 N.E.2d 411. Therefore, we allow the writ as a proper common-law taxpayer action for which security is not required. See *Trustees of Prairie Twp. v. Garver* (1931), 41 Ohio App. 232, 180 N.E. 747; *Walker v. Dillonvale* (1910), 82 Ohio St. 137, 92 N.E. 220, but deny attorney fees pursuant to R.C. 733.61 because all statutory prerequisites for a taxpayer action were not complied with.

*Writ allowed*
*and motion denied.*

MOYER, C.J., SWEENEY, HOLMES, WRIGHT, H. BROWN and RESNICK, JJ., concur.

DOUGLAS, J., concurs in part and dissents in part.

DOUGLAS, J., concurring in part and dissenting in part. I concur in the judgment of the majority to grant the writ but respectfully dissent from the majority's decision to deny attorney fees. In depositing funds to cover the costs of this proceeding, relators have complied with R.C. 733.59 and should be awarded their reasonable attorney fees.