THE STATE EX REL. CONCERNED CITIZENS FOR MORE PROFESSIONAL
GOVERNMENT *v.* CITY COUNCIL OF THE CITY OF ZANESVILLE ET AL.

[Cite as *State ex rel. Concerned Citizens for More Professional
Govt. v. Zanesville City Council* (1994), 70 Ohio St.3d 455.]

(No. 94–1720—Submitted and decided August 31, 1994.)

*Graham & Graham, Stubbins, Lewis, Watson & Erhard Co., L.P.A.,* and *Brent A. Stubbins,* for relator.

*Thomas R. Bopeley,* Zanesville Director of Law, for respondents.

---

*Per Curiam.* In order to be entitled to a writ of mandamus, relator must establish that (1) it has a clear legal right to have the proposed charter issue placed on the November 8, 1994 ballot, (2) respondents have a corresponding legal duty to submit the ordinance concerning the charter issue by placing it on the November 8, 1994 ballot, and (3) relator possesses no adequate remedy in the ordinary course of the law. *State ex rel. Seikbert v. Wilkinson* (1994), 69 Ohio St.3d 489, 490, 633 N.E.2d 1128, 1129.

Relator asserts in its sole proposition of law that respondents must pass the proposed ordinance forthwith, placing the charter commission question on the ballot at the next regularly scheduled election, when one is scheduled not less than sixty nor more than one hundred twenty days after submission of petitions containing signatures of ten percent of the number of voters at the last preceding general municipal election.

Section 8, Article XVIII of the Ohio Constitution provides:

"*The legislative authority of any city* or village may by a two-thirds vote of its members, and *upon petition of ten per centum of the electors shall forthwith, provide by ordinance for the submission to the electors, of the question, 'Shall a commission be chosen to frame a charter.'* The ordinance providing for the submission of such question shall require that it be submitted to the electors at the next regular municipal election if one shall occur not less than sixty nor more than one hundred and twenty days after its passage; otherwise it shall provide for the submission of the question at a special election to be called and held within the time aforesaid. The ballot containing such question shall bear no party designation, and provision shall be made thereon for the election from the municipality at large of fifteen electors who shall constitute a commission to frame a charter, provided that a majority of the electors voting on such question shall have voted in the affirmative. * * * " (Emphasis added.)

Section 14, Article XVIII of the Ohio Constitution provides that "[t]he percentage of electors required to sign any petition provided for herein shall be based upon the total vote cast at the last preceding general municipal election."

Section 7, Article XVIII authorizes municipal corporations to adopt and amend a home rule charter, and Sections 8 and 9, Article XVIII prescribe the procedures for adopting and amending a charter. *State ex rel. Semik v. Cuyahoga Cty. Bd. of Elections* (1993), 67 Ohio St.3d 334, 336, 617 N.E.2d 1120, 1122. Section 8, Article XVIII allows, and on petition by ten percent of the electors requires, a city council to authorize by ordinance an election on the question, "Shall a commission be chosen to frame a charter [?]" *State ex rel. Bedford v. Cuyahoga Cty. Bd. of Elections* (1991), 62 Ohio St.3d 17, 23, 577 N.E.2d 645, 649. The constitutional requirements for the submission of the preliminary issue of selecting a charter commission are clear and complete, and are not to be added to or subtracted from. See *Bedford,* 62 Ohio St.3d at 22, 577 N.E.2d at 648, reaching a similar conclusion concerning the analogous charter amendment provisions of Section 9, Article XVIII. Under Section 111.16 of the rules and regulations of the Zanesville City Council, "[a]ll business presented at Council session *requiring an ordinance* * * * shall be presented in legal form, to the Clerk of Council."

Relator fully complied with the applicable constitutional provision and council regulation by submitting petitions containing the requisite number of signatures to the clerk of council on August 3, 1994. The clerk, on August 8, 1994, certified to council that 586 of the 677 signatures were from electors of Zanesville, which exceeded the required ten percent of the total vote cast at the last preceding general municipal election by over one hundred signatures.

Since the Constitution requires that the submission of the charter commission issue be made by the legislative authority, it follows that the legislature need not

make the submission unless satisfied of the sufficiency of the petitions and that all statutory requirements are fairly met. *Semik,* 67 Ohio St.3d at 335–336, 617 N.E.2d at 1122. Respondents contend that since the constitutional submission power is vested in them, the fact that they were never presented with the petitions is a "fatal defect" in relator's mandamus action. However, under the council's own rules and regulations, relator properly presented the petitions to the clerk of council. Additionally, the city council's authority in reviewing the sufficiency of petitions is limited to approving their form and not their substantive merit. *State ex rel. Polcyn v. Burkhart* (1973), 33 Ohio St.2d 7, 10–11, 62 O.O.2d 202, 203–204, 292 N.E.2d 883, 885. Signatures which, for any reason, have not been examined, must be presumed to be valid. *State ex rel. Blackwell v. Bachrach* (1957), 166 Ohio St. 301, 2 O.O.2d 219, 143 N.E.2d 127, paragraph six of the syllabus.

Respondents' limited authority to review the sufficiency of the petitions must be balanced against their mandatory constitutional duty under Section 8, Article XVIII to submit the charter commission issue "forthwith." In *State ex rel. Jurcisin v. Cotner* (1984), 10 Ohio St.3d 171, 10 OBR 503, 462 N.E.2d 381, we addressed a similar requirement in the Cleveland City Charter for council to submit to the electors a proposed charter amendment upon petition signed by ten percent of the electors of the city at the next regular municipal election occurring between sixty and one hundred twenty days. The Cleveland City Charter provided in part:

"When ten (10) days and two regular meetings of the Council have passed after the filing of a petition fulfilling the requirements of this section, then the Council shall forthwith provide the ordinance for the submission to the electors of the opposed amendment to this Charter."

In *Jurcisin,* the Cleveland City Council could have passed the ordinance ten days after the petition was filed to place the issue on the ballot for the next general election, but instead waited four days until its next regularly scheduled council meeting to enact the ordinance, making the next general election less than sixty days away and outside the time required by the charter. The court held:

" * * * Council was aware of the sixty-day provision in the charter and knew that waiting until March 12, 1984 to enact the ordinance would prevent the issue from being placed on the ballot on May 8, 1984. The charter requires that the ordinance be enacted 'forthwith,' vesting some discretion in council to determine the time for compliance. In the case at bar, council's action in waiting to enact the ordinance until the next regularly scheduled meeting, thereby creating the additional expense and hardship of having a second election within weeks of one already scheduled, constitutes an abuse of that discretion." *Id.* at 173, 10 OBR at 505, 462 N.E.2d at 382.

Subsequently, in *State ex rel. Citizens for a Better Portsmouth v. Sydnor* (1991), 61 Ohio St.3d 49, 572 N.E.2d 649, we applied *Jurcisin* and granted a writ of mandamus compelling placement of a proposed charter amendment on the next general election ballot even though the charter contained no provision similar to the charter provision in *Jurcisin.* In *Sydnor,* the clerk of the city council informed council at its regularly scheduled meeting that the petition contained sufficient signatures and the council tabled the ordinance to put the proposal on the ballot because of objections to its substantive content. The court held that "since respondents had the opportunity to adopt an ordinance to place the proposed amendment on the November 6 ballot, a writ of mandamus will issue to compel its submission to the electors on that ballot instead of at a later special election." *Id.* at 53, 572 N.E.2d at 652. The manifest import of *Jurcisin* and *Sydnor* is that "forthwith" means immediately. *State ex rel. Middletown Bd. of Edn. v. Butler Cty. Budget Comm.* (1987), 31 Ohio St.3d 251, 254, 31 OBR 455, 458, 510 N.E.2d 383, 385; see, also, *Merryman v. Gorman* (C.P.1953), 69 Ohio Law Abs. 421, 117 N.E.2d 629.

In the case at bar, the petitions were filed on August 3, 1994, affording respondents' clerk sufficient time to certify that they contained more than the required number of signatures. Additionally, respondents had considerably more than a reasonable time to independently review the form of the petitions before the constitutional sixty-day period would have elapsed on September 9, 1994. Respondents possessed more time for review than did the city councils in *Jurcisin* (petition filed on February 27, 1984 for placement of proposed charter amendment on May 8, 1984 ballot) and *Sydnor* (supplemental petition filed on August 20, 1990 for placement of proposed charter amendment on November 6, 1990 ballot). By choosing instead to table consideration of the proposed ordinance until its September 12, 1994 regular meeting, respondents abused their discretion by, in all probability, creating the additional expense and hardship of having a second election soon after the already scheduled November 8, 1994 general election. *Jurcisin* and *Sydnor, supra.* Respondents had sufficient opportunity to review the petitions' sufficiency at their August 8, 1994 meeting, particularly when their clerk, admittedly, had already certified that the petitions contained a sufficient number of signatures of electors. By respondents' failure to examine the signatures when they had ample time to do so, the signatures must be presumed valid. *Blackwell, supra.*

As to respondents' contention that relator's petitions were not timely filed because there was inadequate time for potential charter commission candidates to collect signatures and file their nominating petitions, Section Three of the proposed ordinance required nominating petitions signed by at least fifty eligible voters to be filed with the board of elections at least seventy-five days before the election, *i.e.,* August 25, 1994, which still would have provided candidates seven-

teen days to circulate and file petitions if the ordinance were placed on the November 8, 1994 ballot. Additionally, as noted by relator, charter commission candidates could have begun circulating petitions as early as July 14, 1994, when a local newspaper publicized relator's intention to circulate petitions to place the charter commission issue on the November 8, 1994 ballot. Therefore, respondents' assertion does not prevent the issuance of a writ of mandamus here.[1]

Accordingly, relator is granted a writ of mandamus compelling respondents to immediately pass the ordinance placing the charter commission issue on the ballot for November 8, 1994. Additionally, since, as relator contends, respondents' abuse of discretion may have caused confusion about the deadline for filing nominating petitions for charter commission candidates, the deadline for filing these nominating petitions is extended to September 30, 1994, to ensure that any interested candidates may file nominating petitions.

*Writ granted.*

MOYER, C.J., A.W. SWEENEY, DOUGLAS, WRIGHT, RESNICK, F.E. SWEENEY and PFEIFER, JJ., concur.

---

1. Additionally, although the November 8, 1994 election is not the "next regular municipal election," since those occur only in odd-numbered years, see Section 1, Article XVII, Ohio Constitution, R.C. 3501.01(B), and *Billington v. Cotner* (1971), 25 Ohio St.2d 140, 54 O.O.2d 270, 267 N.E.2d 410, it constitutes a regularly scheduled "special election to be called and held within the time aforesaid." Section 8, Article XVIII, Ohio Constitution; *Jurcisin, supra,* 10 Ohio St.3d at 173, 10 OBR at 505, 462 N.E.2d at 382, fn. 1; see, also, *Semik, supra,* 67 Ohio St.3d at 336, 617 N.E.2d at 1122 (" * * * Sections 8 and 9 of Article XVIII require submission between sixty and one hundred twenty days after passage of the certifying ordinance if no general or regular or municipal election occurs within that time.").