[This opinion has been published in *Ohio Official Reports* at 81 Ohio St.3d 590.]

THE STATE EX REL. COMMITTEE FOR THE CHARTER AMENDMENT PETITION—
VOTER APPROVAL FOR COMMERCIAL REZONING, SUPERSTORES, AND
SHOPPING CENTERS, ORDINANCE NO. 67-98, ET AL. *v.* CITY OF AVON ET AL.*

[Cite as *State ex rel. Commt. for the Charter Amendment Petition v. Avon*,
1998-Ohio-598.]

*Elections—Proposed amendment to Avon City Charter to provide for voter
approval of ordinances and resolutions concerning rezoning, superstores,
and shopping centers—Mandamus granted to compel placement of
proposal on May 5 election ballot—Writ and attorney fees granted, when.*

(No. 98-519—Submitted and decided April 14, 1998—Opinion announced April
16, 1998.)

IN MANDAMUS.

————————————

{¶ 1} Relator, Committee for the Charter Amendment Petition—Voter
Approval Commercial Rezoning, Superstores, and Shopping Centers, Ordinance
No. 67-98, proposed an amendment to the Avon City Charter that would provide
for voter approval of ordinances and resolutions concerning commercial rezoning,
superstores, and shopping centers. Respondent Avon City Council had previously
rejected a similar charter amendment proposed by a council member. Respondent
Avon City Council President Edward Krystowski and Avon Mayor James A. Smith
advised the media of their opposition to the amendment.

{¶ 2} On March 3, 1998, the committee filed seventeen part-petitions
containing eight hundred sixty-six signatures with respondent Avon Clerk of
Council Patricia A. Vierkorn requesting that the charter amendment initiative be
placed on the ballot. Vierkorn accepted the petition without requiring payment or
informing the committee about any filing fee. On the same date, the committee

* Reporter's Note: The writ of mandamus was granted by order of the court on April 14, 1998, "consistent with the opinion to follow." 81 Ohio St.3d 1508, ___ N.E.2d ___. The "opinion to follow" is announced today.

demanded that respondent Avon City Council submit the charter amendment to the Lorain County Board of Elections for placement on the May 5 election ballot, in accordance with Sections 8 and 9, Article XVIII of the Ohio Constitution. Avon Law Director Daniel P. Stringer told reporters that the committee may have missed the filing deadline for placing the proposed charter amendment on the May 5 ballot.

{¶ 3} The board of elections verified that there had been six thousand fifty registered voters for Avon's November 1997 election and that the charter amendment petition thus required six hundred five valid signatures for placement on the ballot. On March 4 and 5, Vierkorn took the petition to the board of elections to verify the authenticity of the signatures. Krystowski informed the committee that the city council might submit the proposed charter amendment to the electorate by ordinance without specifying an election date.

{¶ 4} By the morning of March 5, Vierkorn determined that the petition contained seven hundred seventy-three valid signatures of registered electors. On the same day, Krystowski advised the committee that although he was available, he could not arrange any special city council meetings for March 5 or 6 to consider an ordinance to submit the proposed charter amendment to the electorate. The Avon City Council has, as a common practice, previously conducted special meetings to consider urgent matters or to meet deadlines and has at times called three special meetings on the same day. Council is authorized to have these emergency, special meetings without requiring twenty-four-hour advance notification. According to the committee's attorney, despite Krystowski's claim that he could not arrange special meetings for March 5 or 6, other city council members were never contacted concerning possible scheduling of meetings for these dates.

{¶ 5} On March 6, Vierkorn certified the sufficiency of the petition to the city council. Vierkorn placed the ordinance for submission of the proposed charter amendment to the electors on the city council's agenda for its next regularly scheduled meeting on March 9. Council considered the ordinance at its March 9

2

meeting as well as at special meetings on March 10 and 12. On March 12, the city council passed the ordinance submitting the charter amendment to the electorate. The ordinance did not include a specific election date. On March 13, Vierkorn delivered the ordinance to the board of elections with instructions that the board place the charter amendment issue before the electorate at the earliest election date permitted by law. Vierkorn paid a $12.50 filing fee to the board of elections on behalf of the committee. Vierkorn received a check in that amount from the committee when she eventually informed it of the fee.

{¶ 6} After the board advised the city council that it needed to specify a special election date, the city council subsequently passed a resolution directing the board to submit the charter amendment issue to the electors at a June 9 special election. According to the committee, Krystowski might submit a competing charter amendment proposal at the June 9 special election, and a shopping center project that could be subject to the amendment would be approved by council prior to the June 9 election in order to avoid the amendment's potential effect on the project. The June 9 special election will cost the city an additional $2,400 to $3,000.

{¶ 7} Relators, the committee, its members, and other taxpayers and residents of Avon, demanded that the law director bring a mandamus action to compel the placement of the charter amendment proposal on the May 5 election ballot. After the law director refused relators' demand, relators filed this action for a writ of mandamus. Relators seek the writ to compel respondents, city of Avon, Avon City Council and its individual members, and Avon Clerk of Council Vierkorn, to place the charter amendment issue on the May 5 election ballot. Relators also request attorney fees. Following the filing of respondents' answer and motion for judgment on the pleadings and relators' motion to strike respondents' motion, the parties filed evidence and briefs pursuant to the expedited schedule set forth in S.Ct.Prac.R. X(9).

**{¶ 8}** This cause is now before the court for a consideration of the merits.

_____

*Phillips & Co.*, *L.P.A.,* and *Gerald W. Phillips*; *John P. Fox Co., L.P.A.*, and *John P. Fox*, for relators.

*Daniel P. Stringer*, Avon Law Director, for respondents.

_____

**Per Curiam.**

**{¶ 9}** Relators assert that they are entitled to a writ of mandamus to compel respondents to place the proposed charter amendment on the May 5 rather than the June 9 election ballot. Relators claim that the city council had the duty under the Ohio Constitution to enact an enabling ordinance by March 6, 1998, *i.e.*, the sixtieth day before the scheduled May 5 election, in order to place the proposed charter amendment on the May 5 ballot.

**{¶ 10}** Section 7, Article XVIII of the Ohio Constitution authorizes municipal corporations to adopt and amend a home rule charter, and Sections 8 and 9, Article XVIII prescribe the procedures for adopting and amending a charter. *State ex rel. Semik v. Cuyahoga Cty. Bd. of Elections* (1993), 67 Ohio St.3d 334, 336, 617 N.E.2d 1120, 1122. Section 9 of Article XVIII, which incorporates the requirements of Section 8, allows, and on petition by ten percent of the electors, *requires*, the legislative authority of any city, *e.g.*, city council, to "forthwith" authorize by ordinance an election on the charter amendment issue. *Morris v. Macedonia City Council* (1994), 71 Ohio St.3d 52, 54, 641 N.E.2d 1075, 1077.

**{¶ 11}** More specifically, Section 8 of Article XVIII provides:

"*The legislative authority of any city* or village may by a two-thirds vote of its members, and *upon petition of ten per centum of the electors shall forthwith, provide by ordinance for the submission to the electors, of the question*, 'Shall a commission be chosen to frame a charter.' *The ordinance providing for the submission of such question shall require that it be submitted to the electors at the*

*next regular municipal election if one shall occur not less than sixty nor more than one hundred and twenty days after its passage; otherwise it shall provide for the submission of the question at a special election to be called and held within the time aforesaid.*"  (Emphasis added.)  See, also, Section 1, Article XII, Avon Charter ("Council shall forthwith submit such proposed amendment or amendments to the electors in accordance, in each instance, with the provisions of the Constitution of Ohio now or hereafter in effect.").

{¶ 12} As noted by respondents, a city council's mandatory constitutional duty to submit the charter amendment initiative forthwith must be balanced against council's limited authority to review the sufficiency of the petition.  *Morris*, 71 Ohio St.3d at 56, 641 N.E.2d at 1078-1079.  It must, however, be emphasized that "forthwith" means immediately.  *State ex rel. Concerned Citizens for More Professional Govt. v. Zanesville City Council* (1994), 70 Ohio St.3d 455, 459, 639 N.E.2d 421, 424; *State ex rel. Middletown Bd. of Edn. v. Butler Cty. Budget Comm.* (1987), 31 Ohio St.3d 251, 254, 31 OBR 455, 458, 510 N.E.2d 383, 385.

{¶ 13} In *State ex rel. Jurcisin v. Cotner* (1984), 10 Ohio St.3d 171, 10 OBR 503, 462 N.E.2d 381, we addressed a similar requirement in the Cleveland City Charter for council to submit to electors a proposed charter amendment upon petition signed by ten percent of the electors of the city at the next regular municipal election occurring between sixty and one hundred twenty days after passage of the ordinance submitting the proposal.  Section 200 of the Cleveland City Charter provided that "[w]hen ten (10) days and two regular meetings of the Council have passed after the filing of a petition fulfilling the requirements of this section, then the Council shall *forthwith* provide the ordinance for the submission to the electors of the proposed amendment to this Charter."  In *Jurcisin*, the Cleveland City Council could have passed the ordinance ten days after the petition was filed, *i.e.*, sixty-one days before the next general election, to place the issue on the ballot for that election, but instead waited four days until its next regularly scheduled council

meeting to enact the ordinance, making the next general election less than sixty days away and outside the time required by the charter. The clerk of the city council in *Jurcisin* had been advised by the board of elections on the sixty-second day before the next scheduled election that the petition contained the required number of valid signatures. We held:

"Council was aware of the sixty-day provision in the charter and knew that waiting until March 12, 1984 to enact the ordinance would prevent the issue from being placed on the ballot on May 8, 1984. The charter requires that the ordinance be enacted 'forthwith,' vesting some discretion in council to determine the time for compliance. In the case at bar, council's action in waiting to enact the ordinance until the next regularly scheduled meeting, thereby creating the additional expense and hardship of having a second election within six weeks of one already scheduled, constitutes an abuse of that discretion." *Id.*, 10 Ohio St.3d at 173, 10 OBR at 505, 462 N.E.2d at 382.

{¶ 14} Similarly, the Avon City Council here, through its clerk, was advised by the committee of the urgency of the matter when the petition was filed on March 3, the sixty-third day before the scheduled May 5 election. The clerk determined that the petition contained sufficient valid signatures on the morning of March 5, the sixty-first day before the May 5 election.

{¶ 15} Despite respondents' claim that council could not have acted prior to its March 9 regularly scheduled council meeting, respondents introduced no evidence setting forth specific facts to show that it could not have convened special meetings on March 5 or 6. To the contrary, the evidence establishes that the city council has held special meetings in the past to address similar urgent matters. Like the city council in *Jurcisin*, the Avon City Council could have convened a special meeting to enact the enabling ordinance by the sixtieth day before the next scheduled election. Instead, it waited until its next regularly scheduled meeting to consider the ordinance and, like the council in *Jurcisin*, thereby created the

6

"additional expense and hardship of having a second election within * * * weeks of one already scheduled." *Jurcisin*, 10 Ohio St.3d at 173, 10 OBR at 505, 462 N.E.2d at 382.

{¶ 16} Admittedly, council here did not have as much time to review the sufficiency of the petition and enact an enabling ordinance as the legislative authorities in other cases in which we have issued writs of mandamus. See, *e.g., Morris* and *Concerned Citizens, supra*. But respondents do not even argue that council needed more time to exercise its limited authority to review the sufficiency of the petition. They also introduced no evidence of the necessity of any additional review time.

{¶ 17} Therefore, because respondents had the opportunity to adopt an ordinance to place the proposed charter amendment on the May 5 ballot, a writ of mandamus should issue to compel its submission to electors on that ballot instead of at a later special election. *Concerned Citizens*, 70 Ohio St.3d at 459, 639 N.E.2d at 424; *State ex rel. Citizens for a Better Portsmouth v. Sydnor* (1991), 61 Ohio St.3d 49, 53, 572 N.E.2d 649, 652. In other words, "[w]here a municipal legislative authority erroneously either fails to submit a charter amendment when it is presented with a legally sufficient petition or fails to make a prompt determination on the sufficiency of the petition within the constitutional time period, this court has issued writs of mandamus to order placement [of the charter amendment issue] on the next regular election ballot." *State ex rel. Huebner v. W. Jefferson Village Council* (1995), 75 Ohio St.3d 381, 385, 662 N.E.2d 339, 343.

{¶ 18} This conclusion is not altered by the fact that the committee failed to pay the filing fee required by R.C. 3513.10(B)(2)(c) at the time it filed the charter amendment petition. Cf. *State ex rel. Fite v. Saddler* (1991), 62 Ohio St.3d 170, 174, 580 N.E.2d 1065, 1068 ("It is evident that payment of the fee is merely to defray county expenses. As such, it serves neither the public interest nor a public purpose to enforce literally the requirement to pay the fee '[a]t the time of filing a

\* \* \* petition,' when the result would be to stop a free, competitive election."). The clerk of council did not refuse to accept the petition for filing because of nonpayment of the fee, and the committee paid the fee when the clerk ultimately informed the committee that it needed to be paid.

{¶ 19} Based on the foregoing, whether the delay in passing the enabling ordinance was caused by council's opposition to the proposed amendment, a misunderstanding by council of its constitutional duty, or simple neglect, the fact remains that respondents did not act with the immediacy required by Sections 8 and 9, Article XVIII of the Ohio Constitution to submit the charter amendment issue to the electors. Therefore, we grant a writ of mandamus to compel respondents to place the proposed charter amendment on the May 5 election ballot rather than the subsequent June 9 election.

{¶ 20} In so holding, we refuse to adopt relators' request to rule that as long as a legally sufficient charter amendment petition is filed on or before the sixtieth day before the next scheduled election, city council has a duty to submit the issue to the electorate at that election. Neither the Constitution nor applicable law supports relators' position. Instead, each case must be considered separately based on the particular facts involved. There may be circumstances where a charter amendment petition filed on the sixtieth day before the special election would not afford an adequate opportunity for council to determine the sufficiency of the petition and enact an ordinance on the same day.

*Attorney Fees*

{¶ 21} Relators also request attorney fees. The decision to award attorney fees to successful relators in an R.C. Chapter 733 taxpayer suit lies within the court's discretion. R.C. 733.61; *Hubbard ex rel. Creed v. Sauline* (1996), 74 Ohio St.3d 402, 407-408, 659 N.E.2d 781, 786. An award requires a public benefit. *Morris*, 71 Ohio St.3d at 58, 641 N.E.2d at 1080; *Billington v. Cotner* (1974), 37 Ohio St.2d 17, 66 O.O.2d 9, 305 N.E.2d 805, syllabus. Here, respondents concede

that the placement of the proposed charter amendment on the May 5 ballot, obviating the need for another special election on June 9, results in a public benefit to Avon and its residents by saving the expense of the second election. In addition, respondents did not introduce evidence of any reasonable basis for failing to act with the immediacy required by the Constitution to enact an ordinance to place the issue on the May 5 ballot. Relators also gave security for costs, as required by R.C. 733.59. Cf. *Sydnor, supra*. Therefore, we award reasonable attorney fees and order relators to submit a bill and documentation in support of their request for attorney fees, in accordance with the guidelines in DR 2-106.[1]

{¶ 22} Accordingly, we grant a writ of mandamus compelling respondents to place the proposed charter amendment on the May 5, 1998 election ballot, award attorney fees, and order relators to submit a bill and documentation in support of their request for attorney fees.

*Writ granted and request for attorney fees granted.*

MOYER, C.J., DOUGLAS, RESNICK, F.E. SWEENEY, PFEIFER, COOK and LUNDBERG STRATTON, JJ., concur.

_____

1. Based on our disposition, we also overrule respondents' motion for judgment on the pleadings. It is not beyond doubt that relators can prove no set of facts warranting the requested relief, after construing all material factual allegations in the complaint and all reasonable inferences therefrom in relators' favor. *State ex rel. Findlay Publishing Co. v. Hancock Cty. Bd. of Commrs.* (1997), 80 Ohio St.3d 134, 136, 684 N.E.2d 1222, 1224. Our holding moots relators' motion to strike respondents' motion for judgment on the pleadings.