THE STATE EX REL. FISHER ET AL., APPELLEES, *v.*
CITY OF CLEVELAND ET AL., APPELLANTS.

[Cite as *State ex rel. Fisher v. Cleveland,*
109 Ohio St.3d 33, 2006-Ohio-1827.]

(No. 2004–1726—Submitted September 21, 2005—Decided April 26, 2006.)

O'CONNOR, J.

{¶ 1} We are asked to consider whether a municipality, in enforcing its residency requirement for municipal employees, may require that an employee undergoing a residency investigation submit a copy of the employee's income tax returns. We hold that such a request, as part of an informal document request, constitutes an invasion of privacy and is therefore barred.

## I. Facts and Procedural History

{¶ 2} Plaintiffs-appellees Robert Fisher and the Association of Cleveland Fire Fighters, Local 93 of the International Association of Fire Fighters ("relators") initiated this action by filing a statutory taxpayer complaint, pursuant to R.C. 733.59, against the city of Cleveland and the Cleveland Civil Service Commission (collectively, "city appellants"). Relators alleged that the city appellants were violating the right of privacy, as protected by Ohio and federal law, of all full-time firefighter employees of Cleveland by requiring the employees to submit income tax returns as an initial part of residency investigations.[1]

{¶ 3} The pertinent facts follow: The Cleveland Charter requires that a municipal employee be a "bona fide" resident of Cleveland and remain so while employed. Cleveland City Charter Section 74(a). The charter and R.C. Chapter 119 authorize the Cleveland Civil Service Commission to establish rules enforcing the residency requirements and other employment-related conditions. See Cleveland City Charter Section 127 and R.C. 119.02 and 119.03.

{¶ 4} Ever since the residency requirement has been in effect, Cleveland has directed municipal employees to prove their "bona fide" residency in Cleveland. In addition, certain employees are selected for investigation as the result of anonymous tips and other information. As an initial part of a residency investigation, employees receive a document request, which requires employees to

---

1. Appellee Cleveland Police Patrolmen's Association was permitted to intervene and has since adopted each of the relators' positions as its own.

submit completed 1040 tax returns as *actually filed* with Federal, State and Local Income Tax agencies." (Emphasis sic.)

{¶ 5} If the employees do not submit their tax returns, their cases may be referred to a civil-service-commission referee before whom the employees must prove city residency by a preponderance of the evidence. If the commission is satisfied with the documentation provided, no further proceedings are instituted.

{¶ 6} The city appellants seek the tax returns, arguing that the returns are verified under penalty of law and are thus of great probative weight. The returns also may contain information about rental income, secondary residences, secondary employment, mortgage deductions, and property taxes.

{¶ 7} The trial court entered summary judgment in favor of relators and enjoined the city appellants from requesting the tax returns. Pursuant to R.C. 733.61, it also awarded relators attorney fees because they were successful in their action.

{¶ 8} The city appellants appealed on four primary bases. First, they argued that relators did not have standing to pursue the action, as the matter did not concern a public right or benefit. Second, they asserted that they were entitled to the tax returns, as no abuse of the municipal corporate power occurred. Third, they argued that the administrative-subpoena standard should apply, under which relators are required to prove that the requirement for submitting tax returns was unreasonable. Finally, they claimed that the award of attorney fees pursuant to R.C. 733.61 was improper because relators did not post "security for costs," pursuant to R.C. 733.59, at the time of filing the action.

{¶ 9} The Eighth District Court of Appeals affirmed the trial court on every issue. This cause is now before us pursuant to our acceptance of the city appellants' discretionary appeal.

## II. Analysis

### A. Is This Properly a Taxpayer Action?

{¶ 10} As a threshold matter, the city appellants contend that they are entitled to judgment because relators have not properly brought a taxpayer action and therefore have no standing on which to bring their claims. A taxpayer action is properly brought only when the right under review in the action is one benefiting the public. See *State ex rel. White v. Cleveland* (1973), 34 Ohio St.2d 37, 63 O.O.2d 79, 295 N.E.2d 665, paragraph one of the syllabus; *State ex rel. Caspar v. Dayton* (1990), 53 Ohio St.3d 16, 20, 558 N.E.2d 49.

{¶ 11} A jurisdictional analysis of a *statutory* taxpayer action begins with R.C. 733.56, which requires a city law director to apply in the city's name "to a court of competent jurisdiction for an order of injunction to restrain * * * the abuse of its

corporate powers." R.C. 733.59 allows a taxpayer to institute suit in his own name on behalf of the municipal corporation if the law director fails to comply with R.C. 733.56 but prohibits a taxpayer action "until the taxpayer gives security for the cost of the proceeding."

{¶ 12} As established in *White* and discussed in *Caspar*, for a taxpayer to maintain an action under R.C. 733.59, the "aim must be to enforce a public right, regardless of any personal or private motive or advantage." *Caspar*, 53 Ohio St.3d at 20, 558 N.E.2d 49.

{¶ 13} The city appellants argue that the facts of the instant case are closely allied with those of *Caspar*, in which several Dayton police officers sought redress under a taxpayer action for the denial of certain fringe benefits. This court held that an action seeking to compel fringe benefits for the relators' personal benefit does not represent a public aim, nor is it seeking to enforce a public right. Id.

{¶ 14} Here, however, we reach a different result from that in *Caspar* and conclude that although the tax records are sought within the employment relationship, the rights to the records and implications thereof do affect a public right.

{¶ 15} First and foremost, the records are being sought for the enforcement of a rule that requires certain Cleveland employees to be residents of the city. This rule was the result of a 1982 referendum passed by the residents of Cleveland. Therefore, the interests of the people of Cleveland are implicated in this case in two ways.

{¶ 16} First, the interests of the people of Cleveland are implicated because they are voters. Relators' action has the potential (if the city appellants are believed) to eviscerate the ability of the commission to effectively investigate employee-residency issues. Second, residency is a threshold issue for municipal employment by Cleveland. As potential employees, the public is directly affected by the rule itself.

{¶ 17} Additionally, the records sought are being used as part of a civil-service-residency-examination process for which mandatory compliance is required to *continue* employment. A failure to successfully complete the process (for which the tax returns at issue are sought) can result in a termination of public employment. The public has an interest in seeing the continued employment of firefighters and police officers whom it has trained with taxpayer dollars and who have gained invaluable experience in their community.

{¶ 18} These facts are distinguishable from those in *Caspar*. We hold that a taxpayer action may exist when the ability to obtain or continue public employment is implicated by the alleged abuse of the municipal corporate power.

### B. Does the Request for Income Tax Returns Constitute an Abuse of the Municipal Corporate Power?

{¶ 19} The issued injunction prohibits the commission from requesting the income tax returns in question. For the injunction to stand, it must be determined that the commission's requests for the tax returns constitute an "abuse of corporate powers" as described in R.C. 733.56. " 'The abuse of corporate powers, within the purview' of Section 733.56 'includes the unlawful exercise of powers possessed by the corporation, as well as the assumption of power not conferred.' " (Emphasis deleted.) *Porter v. Oberlin* (1965), 1 Ohio St.2d 143, 146, 30 O.O.2d 491, 205 N.E.2d 363, quoting *Elyria Gas & Water Co. v. Elyria* (1898), 57 Ohio St. 374, 49 N.E. 335, syllabus.

{¶ 20} The city appellants argue that, under Cleveland's corporate powers, they are entitled to request copies of tax returns as part of an initial blanket request for documents from employees undergoing a residency investigation. We disagree.

{¶ 21} Cleveland requires its employees to live within city limits. Cleveland City Charter Section 74(a). Further, the municipality can require the employee to carry the burden of proving compliance with the residency requirement. *Jones v. Cleveland,* 152 Ohio App.3d 278, 2003-Ohio-1534, 787 N.E.2d 666, ¶ 13.

{¶ 22} Under the Cleveland charter, the commission is vested with the investigatory authority concerning residency and has the power to request documents relevant to its investigations. See R.C. 124.40 et seq. Therefore, there is no abuse of the municipal corporate power; the commission here is not attempting to assume a power not conferred. The question remains, however, whether the power being exercised is being exercised in a lawful fashion.

{¶ 23} Relators contend that requesting the tax returns constitutes a breach of both the state and the federal constitutional rights to privacy. Although the right to privacy can be amorphous and esoteric, we focus on the more defined body of law that discusses the right in the context of public-records disclosure. In the context of personal information, "[c]onstitutional privacy rights are 'state or federal law' " that prohibit disclosure. *State ex rel. WBNS TV, Inc. v. Dues,* 101 Ohio St.3d 406, 2004-Ohio-1497, 805 N.E.2d 1116, ¶ 41.

{¶ 24} In *State ex rel. Beacon Journal Publishing Co. v. Akron* (1994), 70 Ohio St.3d 605, 640 N.E.2d 164, this court discussed the federal constitutional right to privacy as it applied to the " 'individual interest in avoiding disclosure of personal matters.' " Id. at 607, 640 N.E.2d 164, quoting *Whalen v. Roe* (1977), 429 U.S. 589, 598–600, 97 S.Ct. 869, 51 L.Ed.2d 64. We reiterate today that the interest in avoiding disclosure of "personal matters," such as those found on income tax returns and as described in *Whalen,* encompasses public employees in the civil-service-investigatory process.

{¶ 25} The holding in *Beacon Journal* sets forth a two-step process for determining whether a right to privacy applies to certain disclosures of personal matters. First must be determined whether a legitimate expectation of privacy exists in the information sought to be disclosed. Second, if the expectation of privacy exists, the benefits to the individual of withholding the information must be weighed against the benefits to the government of disclosure. *State ex rel. Beacon Journal Publishing Co.*, 70 Ohio St.3d at 608, 640 N.E.2d 164.

### 1. An Expectation of Privacy

{¶ 26} As noted by relators, Section 6103, Title 26, U.S.Code and R.C. 5747.18 place strict limits on the ability of federal and state employees who have access to tax returns and tax-return information to disclose that information. Section 6103(a), Title 26, U.S.Code actually describes the tax-return information as "confidential."

{¶ 27} In *Beacon Journal*, we held that the treatment by the Privacy Act of 1974, Section 552(a), Title 5, U.S.Code, of Social Security numbers was sufficient to create an expectation of privacy in the income tax returns. The recognition in the U.S. Code and the Ohio Revised Code that tax returns are to be treated in extreme confidence creates an expectation of privacy in them. *Beacon Journal*, 70 Ohio St.3d at 609, 640 N.E.2d 164.

{¶ 28} Cleveland makes much of the fact that no violation of either Section 6103, Title 26, U.S.Code or R.C. 5747.18 is actually occurring, as those statutes penalize only *governmental* releases of tax-return data, not disclosures by the individual taxpayer. Regardless, the mere existence of the statutory scheme is sufficient to support recognizing an individual's expectation of privacy in the documents. See *State ex rel. WBNS TV, Inc.*, 101 Ohio St.3d 406, 2004-Ohio-1497, 805 N.E.2d 1116, ¶ 43 (discussing the absence of a protective statutory scheme as being the primary indicator of a lack of a legitimate expectation of privacy).

### 2. Weighing the Privacy Interests Against the Benefits of Disclosure

{¶ 29} Having found that a legitimate expectation of privacy exists in the income tax returns, we next weigh the benefits of disclosure against the privacy interests implicated by disclosure. The investigation requires employee submission of seven required documents. Two of the items are mandatory: the 1040 tax returns at issue and a document evidencing home ownership or house rental in Cleveland (i.e., a deed, mortgage, or lease). The other five items may be selected at the employee's discretion from a list that includes a voter-registration card, a homeowner's or renter's insurance policy, utility records, property tax records, children's school records, Ohio identification cards, motor-vehicle records, financial records, and mail sent to an employee's Cleveland address.

{¶ 30} Cleveland argues that it learns much from the tax returns that it would otherwise be unable to learn. The city ascribes particular weight to the returns because they contain information about other employment, rental income, secondary residences, mortgage deductions, and property taxes, all of which pertain to the residency of the employee. Further, the tax returns must be signed and verified.

{¶ 31} Relators contend that the mandatory production of tax returns compels disclosure of private and irrelevant information, such as alimony payments, handicaps of family members, and financial losses.[2]

{¶ 32} Both parties acknowledge that the tax returns represent significant insight into the properties, assets, family history, employment history, and unrelated business relationships of all individuals covered by the returns. The comprehensiveness of the information is precisely the point: tax returns reflect intimate, private details of an individual's life. Cleveland's stated reasons for seeking the tax returns do not outweigh the negative implications for an individual forced to disclose significant personal information unrelated to the residency investigation at issue, particularly when there is no showing that the city is unable to obtain elsewhere information of the same value as that revealed on an income tax return—e.g., sworn statements.

{¶ 33} The document request made by Cleveland at the beginning of a residency investigation is just that: a document request. The city receives seven documents, from which it determines whether further investigation is necessary. If the employee fails to submit the tax returns, the matter may be referred for a hearing at which the employee must submit evidence and call witnesses to prove, by a preponderance of the evidence, residency within the city.

{¶ 34} Cleveland fails to sufficiently explain how a residency investigation will be hampered *without* the tax returns. The employee is already required to submit significant additional documentation in support of residency. Moreover, at that point in the process, the commission has yet to exercise its full investigative powers, including the use of subpoenas. After the submission of all the documentation, it is at the commission's discretion whether to schedule a hearing as described above.

{¶ 35} The city appellants place great weight on *Sweeney v. Bowen* (E.D.N.Y. 1989), No. 86 CV 0581, 1989 WL 88004, *3, to establish that a requirement to submit tax returns under a similar "request mechanism" does not violate a constitutional right to privacy. *Sweeney* is not dispositive in this case, because of its distinct factual differences. That case involved an investigation of an individual who was allegedly receiving federal retirement insurance benefits in excess of

2. At least as of December 13, 2002, employees may redact some information from the tax returns.

those to which he was entitled while he was still working. The court held that it was not a violation of his constitutional right to privacy to be required to give up the most relevant documents (the corporate tax returns) in such an investigation. Here, the commission has numerous other methods of redressing the issue at hand. The commission properly may require at least six other pieces of documentation, maintain and use its subpoena power, and conduct a full hearing. Therefore, in the context of this case, we hold that a municipal employee's right to privacy outweighs any benefit to be obtained from the disclosure of individual tax returns required to be produced as part of an informal document request in a residency investigation. The request policy constitutes a breach of the employees' right to privacy, which is an abuse of the corporate powers, and injunction was the proper remedy pursuant to R.C. 733.56. This holding recognizes that the commission has numerous alternatives during this initial, informal document-request process that do not so clearly intrude on employees' privacy rights.

## C. What Standard of Review Should Have Been Applied?

{¶ 36} As a related matter, the city appellants contend that the appellate court used the wrong standard of review in deciding the matter. The city appellants argue that the general deference applied to administrative subpoenas should apply to the circumstances at hand. *Harris v. Stutzman* (1989), 42 Ohio St.3d 13, 536 N.E.2d 1154, syllabus. They encourage us to adopt the four-part administrative-subpoena-examination standard approved in *Doe v. United States* (C.A.6, 2001), 253 F.3d 256, 265.[3]

{¶ 37} We need not reach this issue. The city appellants issued no subpoena. They issued a document "request," and a failure to submit the tax returns results in a hearing, during which the employee is required to prove residency. See Cleveland Civil Service Rule 17.00. No enforceable subpoena exists, and we decline to apply the law concerning subpoenas in such a circumstance.

{¶ 38} The city appellants also contend that the Eighth District's holding that Cleveland must have "compelling need" to request employee tax returns was inappropriate, asserting that civil-discovery rules do not apply to administrative investigations. See *State ex rel. Fisher v. Cleveland*, 2004-Ohio-4345, ¶ 28. Again, we need not reach this issue, as there is simply is no clear-cut standard by which to review the procedure being used here.

---

3. Tangentially, the city appellants argue that the injunction issued here that prevents the commission from "requesting" the tax returns at issue may prevent a trial court from enforcing a properly ordered subpoena. That issue is not properly before the court today, as the taxpayer action was filed challenging only the document-request practice, which does not implicate any subpoena process.

{¶ 39} Employees undergoing a residency investigation are presented with a mandatory request for their tax returns. There is no method available for challenging the reasonableness or necessity of this request. Although this method is clearly authorized under the Cleveland Charter and the Ohio Revised Code, it is informal and enforced only with punitive action.

{¶ 40} Despite the discussion of the Eighth District Court of Appeals endorsing the "compelling need" standard, the instant procedure contains none of the civil-litigation safeguards that accompany that standard. Unlike in the civil-litigation context, there is no impartial judge from whom a protective order may be sought. Further, there is no opportunity to evaluate the necessity or requirement of the tax returns in light of the other information presented to the commission. There is only a hearing before a city referee on the ultimate issue.

{¶ 41} We need not determine which standard of review is appropriate, as this case is controlled by our holding as it applies to privacy rights and the disclosure of personal information.

### D. Are Attorney Fees Recoverable?

{¶ 42} Cleveland contends that in order to recover attorney fees for a statutory taxpayer action, relators are required to actually post security for the cost of the proceedings. In the instant matter, the trial court entered a nunc pro tunc entry waiving security for these costs. R.C. 733.59, which creates statutory taxpayer complaints, provides, "No such suit or proceeding shall be entertained by any court until the taxpayer gives security for the cost of the proceeding." Cleveland argues that a failure to post the security at the initial filing of the complaint constitutes a full waiver of the statutory taxpayer action, and any consideration thereafter must be of only a common-law taxpayer action pursuant to *State ex rel. Citizens for a Better Portsmouth v. Sydnor* (1991), 61 Ohio St.3d 49, 54, 572 N.E.2d 649.

{¶ 43} Cleveland misstates our opinion in *Sydnor*, which involved an original mandamus action relating to an election issue. The relators, who prevailed before us, filed it as a statutory taxpayer action and sought attorney fees. However, the relators had not properly presented a statutory taxpayer action, as R.C. 733.59 "unequivocally withholds jurisdiction to bring a statutory taxpayer action unless such security is given." Id. Relators had not given any security. In that case, we held that the relators had properly presented a common-law taxpayer action for which security is not required, but for which attorney fees are not recoverable. Id., citing *Trustees of Prairie Twp. v. Garver* (1931), 41 Ohio App. 232, 180 N.E. 747, and *Walker v. Dillonvale* (1910), 82 Ohio St. 137, 92 N.E. 220. The holding that cases filed without security for costs are automatically, and without further consideration, converted into common-law taxpayer proceedings has not been considered beyond *Sydnor*.

{¶ 44} In finding no error on Cleveland's assignment on this issue, the Eighth District Court of Appeals noted, pursuant to *Sydnor*, that the trial court had no authority to entertain the action until costs had been waived. *State ex rel. Fisher v. Cleveland*, 2004-Ohio-4345, ¶ 32. Given that the trial court had already entertained a motion to dismiss by Cleveland and the commission, had a responsive answer filed by Cleveland and the commission (which did not address the lack of the security), and was in the process of reviewing a substantive motion for summary judgment, the Eighth District found the waiver entry to be proper, as without it, the court lacked jurisdiction.[4]

{¶ 45} We find this to be the proper analysis. When on notice that the relators had failed to file the required security—after the case had already proceeded for several months and through two motions, the court knew the case had a jurisdictional defect. The court, with its inherent powers, chose to remedy the defect. Despite any irregularities in the exact form of the entry, the city appellants have failed to cite any authority precluding the trial court from waiving such costs. Absent such preclusion, the nunc pro tunc entry served as an effective waiver of costs. Accordingly, we find that under the facts presented, the trial court correctly entertained the suit as a statutory taxpayer action, and attorney fees were recoverable.

### III.   Conclusion

{¶ 46} The judgment of the Eighth District Court of Appeals is affirmed.

Judgment affirmed.

MOYER, C.J., RESNICK, PFEIFER, LUNDBERG STRATTON, O'DONNELL and LANZINGER, JJ., concur.

———————

Patrick A. D'Angelo, L.L.C., and Patrick A. D'Angelo; Joseph W. Diemert Jr. & Associates, Joseph W. Diemert Jr., and Thomas Hanculak, for appellees.

Teresa M. Beasley, Cleveland Law Director, Thomas J. Kaiser, Chief Trial Counsel, and Cortney R. Oren, Assistant Law Director, for appellants.

———————

4. The Eighth District Court of Appeals did not agree that the nunc pro tunc form was proper. *State ex rel. Fisher v. Cleveland*, 2004-Ohio-4345, ¶ 32