[Cite as *Shinn v. Columbus*, 2025-Ohio-183.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| Linda Shinn et al., | : | |
| Plaintiffs-Appellees, | : | |
| Donald Cade, | : | No. 24AP-181 |
| | | (C.P.C. No. 22CV-1589) |
| Plaintiff-Appellant, | : | |
| | | (REGULAR CALENDAR) |
| v. | : | |
| City of Columbus, Ohio et al., | : | |
| Defendants-Appellees. | : | |

D E C I S I O N

Rendered on January 23, 2025

**On brief:** *Phillip L. Harmon*, for appellant.
**Argued:** *Phillip L. Harmon*.

**On brief:** *Zachary M. Klein*, City Attorney, *Aaron D. Epstein*,
*Lara Baker-Morrish*, and *Richard N. Coglianese*, for appellee
City of Columbus. **Argued:** *Aaron D. Epstein*.

APPEAL from the Franklin County Court of Common Pleas

LELAND, J.

{¶ 1} Plaintiff-appellant, Donald Cade, appeals from a decision and entry of the
Franklin County Court of Common Pleas granting summary judgment in favor of
defendant-appellee, City of Columbus ("city"), and dismissing appellant's complaint for
declaratory judgment and injunctive relief.

**I. Facts and Procedural History**

{¶ 2} The following background facts, taken from the trial court's decision on
summary judgment as well as the record of proceedings, are essentially not in dispute. This

action arises out of a city construction project to improve Little Turtle Way ("LTW"), a residential community located in northeast Columbus. On January 31, 2022, the Columbus City Council ("city council") passed Ordinance 1820-2021, authorizing the Department of Public Service ("DPS") "to contract with Strawser Paving" and to "appropriate[] up to $5,853,830.77 from the Streets and Highways Bond Fund to complete the Little Turtle Way Improvements Project." (Feb. 13, 2024 Decision & Entry at 1.) Because the original plans for the Little Turtle Way Improvements Project (hereafter "the LTW Project") required "additional property," city council "passed Ordinance 1656-2019 in June 2019," authorizing "the City Attorney 'to acquire fee simple title and lesser interests in and to certain parcels of real estate . . . and to negotiate with property owners to acquire the additional rights of way needed to complete' the LTW Project." (Feb. 13, 2024 Decision & Entry at 1.)

{¶ 3} Donald Cade (individually "Cade" or "appellant") and Linda Shinn (individually "Shinn") "are property owners from whom Columbus sought to acquire additional property rights." (Feb. 13, 2024 Decision & Entry at 1-2.) On June 22, 2021, Cade "signed a real estate purchase contract" with the city in which "Cade agreed to transfer a portion of his property to [the city] for $3,000." (Feb. 13, 2024 Decision & Entry at 2.) Similarly, on June 28, 2021, Shinn "agreed to grant [the city] a two-year construction easement for a portion of her property in exchange for $1,200." (Feb. 13, 2024 Decision & Entry at 2.)

{¶ 4} On June 28, 2021, city council "adopted Resolution 0107X-2021," which "set forth" the city's "intent to appropriate certain rights in portions of twelve parcels of real estate in the event the City Attorney was unable [to] agree with the owners of the real estate necessary to complete the LTW Project." (Feb. 13, 2024 Decision & Entry at 2.) The properties of Cade and Shinn were "among those" the city "intended to appropriate if an agreement was not reached." (Feb. 13, 2024 Decision & Entry at 2.) City council "adopted the Resolution as a consent action, which permits [city council] to read a group of ordinances and resolutions together and then approve the group with a single motion and a single roll call." (Feb. 13, 2024 Decision & Entry at 2.)

{¶ 5} On January 31, 2022, city council "passed Ordinance 0144-2022, which repealed Resolution 0107X-2021 because the 'Department of Public Service has determined that the real estate [identified within Resolution 0107X-2021] is no longer

required to complete the project.' " (Feb. 13, 2024 Decision & Entry at 2.) The real estate at issue "included" the properties of Shinn and Cade. (Feb. 13, 2024 Decision & Entry at 2.)

{¶ 6} On March 11, 2022, Cade, Shinn, and two other plaintiffs, Nicholas Anderson and Chelsea Anderson, filed a complaint for declaratory judgment and injunctive relief, naming as defendants the city and Ohio Attorney General David Yost. According to the complaint, Mo Dioun "owns, controls, or manages" Firewater Limited ("Firewater"), a "limited liability company that owns the real property within the boulevard area that separates Little Turtle Way northbound from Little Turtle Way southbound." (Compl. at ¶ 23.)

{¶ 7} The complaint alleged "the DPS entered into an oral agreement" with Firewater, "in which Firewater agreed to transfer certain real estate along the southbound lanes" of LTW to the city in exchange for the city "agreeing to vacate and transfer to Firewater" certain city owned "right-of-way that is currently the northbound lanes" of LTW. (Compl. at ¶ 24.) It was alleged the oral contract entered between the city and Firewater was never approved by city council, in violation of Columbus City Charter (hereafter "City Charter") Sections 159 and 188, and Columbus City Code (hereafter "C.C.C.") 909.02. Count One of the complaint sought a declaratory judgment regarding the alleged "unlawful Land-Swap Deal" between Firewater and the city. (Compl. at ¶ 72.)

{¶ 8} The complaint further alleged the DPS subsequently decided to vacate the northbound lanes of LTW and, according to Count Two, this constituted an "unlawful decision to vacate a public road for private development purposes without an ordinance from Columbus City Council approving same in the manner required by law." (Compl. at ¶ 73.) Count Three of the complaint alleged a violation of the Ohio Open Meetings Act (hereafter "Open Meetings Act"), R.C. 121.22, and the city's open meetings laws, City Charter Sections 8 and 240. Count Four of the complaint asserted a taxpayer suit under City Charter Sections 71, 72, and 74, and R.C. 733.61, while Count Five alleged breach of contract. Plaintiffs also sought a declaration that C.C.C. 111.15 was unconstitutional as in conflict with R.C. 121.22 and the city's open meeting laws.

{¶ 9} On March 17, 2022, plaintiffs filed a motion for temporary restraining order, preliminary injunction, and permanent injunction. On March 18, 2022, plaintiffs filed a

notice of dismissal of all claims against the Ohio Attorney General. On March 21, 2022, the trial court granted a temporary restraining order against the city and set the matter for hearing on plaintiffs' motion for a preliminary injunction.

{¶ 10} On March 28, 2022, the city filed its answer to the complaint. On March 29, 2022, plaintiffs filed a motion to enforce subpoenas against trial witnesses and a motion for extension of temporary restraining order and continuance of preliminary injunction hearing. By decision and entry filed on March 30, 2022, the trial court denied plaintiffs' motion to enforce subpoenas.

{¶ 11} Beginning on March 31, 2022, a magistrate of the trial court conducted a two-day hearing on the motion for preliminary injunction. On April 12, 2022, the magistrate issued a decision denying plaintiffs' motion for preliminary injunction.

{¶ 12} On April 13, 2022, plaintiffs filed objections to the magistrate's decision denying their motion for preliminary injunction. On April 14, 2022, the city filed a memorandum contra plaintiffs' motion and objections. The trial court, by decision and entry filed on April 19, 2022, adopted the magistrate's decision and denied plaintiffs' motion for preliminary injunction against the city. In its decision, the trial court held in part: "[T]he Court finds that there is no clear and convincing evidence of an oral land-swap agreement between Defendant and Firewater Limited, or that the purported agreement was procured by corruption. The evidence is simply lacking." (Apr. 19, 2022 Decision & Entry Adopting Mag.'s Decision at 7.)

{¶ 13} On July 18, 2022, plaintiffs filed a notice of dismissal of certain claims, without prejudice. Specifically, plaintiffs Nicholas Anderson and Chelsea Anderson jointly dismissed all of the claims in their complaint against the city. Further, Shinn dismissed the claims in her complaint as to Counts One, Two, Three, and Four, leaving only Count Five as her remaining claim against the city. Cade dismissed the claims under Counts One and Two of his complaint, leaving Counts Three, Four, and Five as his only remaining claims against the city.

{¶ 14} On November 12, 2022, Cade and Shinn filed a motion to enforce subpoenas against "trial witnesses Mo Dioun and Mina Dioun." On November 15, 2022, Cade and Shinn filed a motion to enforce subpoena against "trial witness[] Michael B. Coleman." On November 28, 2022, non-parties Mo Dioun and Mina Dioun filed a memorandum contra

plaintiffs' motion to enforce subpoena.   On November 29, 2022, the trial court filed an entry denying plaintiffs' motion to enforce subpoena against trial witness Michael B. Coleman.

{¶ 15} On December 2, 2022, Cade and Shinn filed a motion to deem paragraphs 24-26 of plaintiffs' complaint admitted by the city.  On December 12, 2022, the city filed a memorandum contra plaintiffs' motion to deem certain paragraphs of the complaint admitted by the city.  On December 16, 2022, non-parties Mo Dioun and Mina Dioun also filed a memorandum contra plaintiffs' motion.

{¶ 16}   On December 12, 2022, the city filed a motion for summary judgment.  On January 8, 2023, plaintiffs filed a memorandum in opposition to the city's motion for summary judgment.   On January 13, 2023, the city filed a response to plaintiffs' memorandum in opposition.

{¶ 17} On September 30, 2023, counsel for plaintiffs filed a motion to "disqualify Columbus City Attorney's Office as counsel of record for Defendant City of Columbus."  On October 16, 2023, the city filed a memorandum in opposition to plaintiffs' counsel's motion to disqualify.  By entry filed on October 31, 2023, the trial court denied plaintiffs' counsel's motion to disqualify the city attorney's office as counsel of record.

{¶ 18} On February 13, 2024, the trial court filed a decision and entry granting the city's motion for summary judgment.  In its decision, the trial court found a lack of evidence demonstrating a violation of the Open Meetings Act, and further found it did not have jurisdiction over the taxpayer action.  The court also agreed with the city's contention that declaratory judgment would not terminate any controversy with respect to plaintiffs' claims for breach of contract "because the parties mutually terminated the contracts."  (Feb. 13, 2024 Decision & Entry at 7.)   Finally, the court found it unnecessary to determine the constitutionality of C.C.C. 111.15 because, "even if the Court were to find it unconstitutional, it would not impact the validity of Ordinance 1820-2021, Ordinance 0144-2022, or Resolution 0107X-2021." (Feb. 13, 2024 Decision & Entry at 8.)

## II. Assignments of Error

{¶ 19} Cade appeals and assigns the following five assignments of error for our review:

> [I.] The trial court abused its discretion by failing to rule on and grant plaintiffs' motion to enforce subpoenas against trial witnesses Mo Dioun and Mina Dioun.
>
> [II.] The trial court abused its discretion by failing to rule on and grant plaintiffs' motion to deem paragraphs 24-26 of plaintiffs' complaint admitted by City of Columbus.
>
> [III.] The trial court abused its discretion by failing to rule on and grant plaintiffs' motion for extension of time to respond to City's motion for summary judgment.
>
> [IV.] The trial court erred as a matter of law by failing to conduct a hearing on and grant plaintiffs' motion to disqualify Columbus City Attorney's Office as counsel of record for defendant City of Columbus; request for hearing.
>
> [V.] The trial court erred as a matter of law by granting defendant's motion for summary judgment.

## III. Analysis

{¶ 20} Under the first assignment of error, Cade asserts the trial court abused its discretion in failing to rule on and grant plaintiffs' motion to enforce subpoenas against trial witnesses Mo Dioun and Mina Dioun (collectively "the Diouns"). According to Cade, the motion to enforce "sought relevant evidence of corruption concerning Count 3 (Open Meetings) and Count 4 (Taxpayer Suit) of Plaintiffs' Complaint," including "critical evidence of the backroom and putatively unlawful deals at both the * * * DPS and Columbus City Council that only Dioun and Coleman could provide." (Appellant's Brief at 17.) Cade maintains the failure of the trial court to issue a ruling on the motion to enforce constituted an abuse of discretion.

{¶ 21} In response, the city argues the trial court's failure to enforce the subpoenas was not an abuse of discretion because the motion to enforce was overly broad and unduly burdensome, as Cade "demanded all communications and records of business conducted between two individual nonparties and multiple nonparty entities, *whether or not related to Little Turtle Way*, for a period of seven years (i.e., starting three years before the City

began the LTW project)." (Emphasis sic.) (Appellee's Brief at 17.) The city further argues the trial court ruled on Cade's demand for records and testimony from the Diouns earlier in this same litigation, and that the trial court did not abuse its discretion in failing to rule on an identical motion for the second time.

{¶ 22} In general, "an appellate court reviews a trial court's ruling to quash or enforce a subpoena under an abuse-of-discretion standard." *Evans v. Ohio Dept. of Rehab. & Corr.*, 10th Dist. No. 16AP-767, 2018-Ohio-1035, ¶ 12, citing *Bell v. Nichols*, 10th Dist. No. 10AP-1036, 2013-Ohio-2559, ¶ 36. Thus, "[a]bsent an abuse of discretion, an appellate court must affirm a trial court's disposition of discovery issues." *Id.*, citing *Bd. of Clark Cty. Commrs. v. Newberry*, 2d Dist. No. 2002-CA-15, 2002-Ohio-6087, ¶ 13. Further, "when a trial court fails to rule upon a pretrial motion, it may be presumed that the court overruled it." *State ex rel. Cassels v. Dayton City School Dist. Bd. of Edn.*, 69 Ohio St.3d 217, 223 (1994), citing *Newman v. AI Castrucci Ford Sales, Inc.*, 54 Ohio App.3d 166 (1st Dist.1988). The determinative issue therefore is whether the court "abused its discretion" in overruling the motions to enforce subpoenas. *Id.*, citing *Jewett v. our Lady of Mercy Hosp. of Mariemont*, 82 Ohio App.3d 428 (1st Dist.1992).

{¶ 23} The record indicates plaintiffs filed their motion to enforce subpoenas issued to the Diouns on November 12, 2022. In that motion, plaintiffs argued Mo Dioun's testimony was necessary for the trial court to gain an understanding as to how the LTW project "was approved behind closed doors in violation of the Open Meetings Act." (Nov. 12, 2022 Mot. to Enforce at 7.) Plaintiffs further argued the testimony of the Diouns was necessary with respect to allegations in Count Four of the complaint as to a donation agreement between the city and Firewater.

{¶ 24} On November 28, 2022, the Diouns filed a memorandum contra plaintiffs' motion to enforce subpoenas. In their memorandum, the Diouns argued the issues raised by plaintiffs were previously addressed by the trial court when it denied enforcement of a subpoena "seeking the same information from Firewater * * * and The Stonehenge Company," companies affiliated with Mo Dioun. (Nov. 28, 2022 Memo Contra at 1.) With respect to Count Three, asserting an Open Meetings Act violation, the Diouns argued the subpoenas involved "similar requests directed at the activities of private non-parties, not

impermissible action taken by the Columbus City Council." (Nov. 28, 2022 Memo Contra at 3.)

{¶ 25} As noted, when a trial court fails to rule on a motion, such motion will be presumed denied for purposes of review on appeal. Accordingly, and assuming the trial court overruled the motion, we find no abuse of discretion. In considering the motion to enforce as to Counts Three and Four, the trial court could have reasonably concluded the issuance of subpoenas to non-party Diouns for information and records over a seven-year period was overly broad and unduly burdensome, and not narrowly tailored to the issues relevant to the declaratory judgment (i.e., including alleged acts by city council purportedly in violation of the Open Meetings Act as well as the city's purported misapplication of its funds).

{¶ 26} Further, and as noted by the city, the trial court previously ruled on and denied a similar motion by plaintiffs to enforce subpoenas issued to several entities with which Mo Dioun is affiliated. Specifically, on March 29, 2022, plaintiffs filed a motion to enforce subpoenas directed to Firewater and The Stonehenge Company ("Stonehenge"). In objecting to that motion, counsel for Firewater and Stonehenge argued the subpoenas were overly broad, unduly burdensome and, with respect to Counts Three and Four, not narrowly tailored to relevant meetings, communications, or legal issues regarding those Counts. By decision and entry filed on March 30, 2022, the trial court denied the motion based on its review of "(1) the motion, (2) the subpoenas that are the subject of the motion, (3) the Civ.R. 45(C)(2)(b) objections to the subpoenas served on Plaintiff by Firewater Limited, The Stonehenge Company, and American Structurepoint, Inc., and (4) all documents submitted by Plaintiffs in support of the motion." (Mar. 30, 2022 Decision & Entry at 1.)

{¶ 27} The record indicates the subpoena requests made upon the Diouns (i.e., the subject of the motion to enforce filed November 12, 2022) are essentially the same as those plaintiffs previously served on Firewater and Stonehenge (i.e., the subject matter of the motion to enforce filed on March 29, 2022). Upon review, Cade has failed to show any abuse of discretion by the trial court in implicitly denying plaintiffs' motion to enforce subpoenas against the Diouns where plaintiffs raised identical arguments to those in their prior motion to enforce which the trial court considered and denied.

{¶ 28} Accordingly, Cade's first assignment of error is not well-taken and is overruled.

{¶ 29} Under the second assignment of error, Cade asserts the trial court abused its discretion in failing to rule on and grant plaintiffs' motion to deem paragraphs 24-26 of plaintiffs' complaint admitted by the city. Cade contends that, under Civ.R. 8(b), the city was required to admit those facts within paragraphs 24-26 that were true, and to deny those facts that were materially false.

{¶ 30} Paragraphs 24-26 of the complaint state in part as follows:

> 24. At an as-yet undetermined time prior to April 2, 2021, the DPS entered into an oral agreement with Firewater * * * in which Firewater agreed to transfer certain real estate along the southbound lanes of Little Turtle Way to the City, in exchange for the City agreeing to vacate and transfer to Firewater certain City owned right-of-way that is currently the northbound lanes of Little Turtle Way.
>
> 25. DPS Little Turtle Way Project Director Kevin Thomas explained that *quid pro quo* agreement (hereinafter, the "Donation Agreement", or the "Land-Swap Deal") to DPS Right-of-Way Coordinator Darla Marcum on April 2, 2021, saying:
>
> "[T]he owner of properties required by the city for this [Little Turtle Way Project] is donating all property needed to the city at no cost ... The area that is being considered for this right of way transfer is approximately 30,618 square feet."
>
> 26. Mr. Thomas further confirmed the Land-Swap Deal, stating:
>
> "The total area of the existing right of way that will be residual area at the end of the construction process and which will be available for transfer as part of the donation agreement is 0.886 acres which shall come from two areas of existing right of way."

(Emphasis omitted.) (Mar. 11, 2022 Compl.)

{¶ 31} In general, "[i]n a summary judgment exercise, the court may look to any admission in the answer of a defendant as evidence in support of a motion for summary judgment." *Stanwade Metal Prods., Inc. v. Heintzelman*, 158 Ohio App.3d 228, 2004-Ohio-4196, ¶ 16 (11th Dist.). *See also APCO Indus. v. Braun Constr. Group, Inc.*, 10th Dist.

No. 19AP-430, 2020-Ohio-4762, ¶ 38 ("An admission in a pleading is equivalent to proof of the fact admitted and, therefore, is evidence that a court may consider in rendering a decision on summary judgment.").

{¶ 32} Pursuant to Civ.R. 8(B), "[a] party shall state in short and plain terms the party's defenses to each claim asserted and shall admit or deny the averments upon which the adverse party relies." Thus, Civ.R. 8(B) "requires a party to admit or deny the averments upon which the adverse party relies." *Everett v. Cinque*, 10th Dist. No. 99AP-1409, 2000 Ohio App. LEXIS 3906 (Aug. 31, 2000). However, where a defendant "denies an allegation made by the plaintiff, the plaintiff must then present evidence at trial in order to prove the matter denied, if the matter is material to [the] claim." *Id.*, citing *Rumpke v. Acme Sheet & Roofing, Inc.*, 2d Dist. No. 17654, 1999 Ohio App. LEXIS 5392 (Nov. 12, 1999).

{¶ 33} The record in this case indicates the city filed its answer on March 28, 2022, and in that answer the city specifically denied the allegations in paragraphs 24-26. Cade does not dispute that the city denied the allegations, but simply contends the trial court should have deemed them admitted based on his assertion the city "had no legitimate reason to deny those paragraphs in their entirety." (Appellant's Brief at 19.) Cade, however, cites no persuasive authority in support of his argument the trial court should have deemed the allegations admitted under the circumstances. Here, inasmuch as the city specifically denied the allegations, in compliance with Civ.R. 8(B), we find no abuse of discretion by the trial court in implicitly overruling the motion.

{¶ 34} Accordingly, Cade's second assignment of error is not well-taken and is overruled.

{¶ 35} Under the third assignment of error, Cade asserts the trial court abused its discretion in failing to rule on plaintiffs' motion for extension of time to respond to the city's motion for summary judgment. Cade contends the motion was timely and "explicitly filed pursuant to Civ.R. 56(F)." (Appellant's Brief at 21.)

{¶ 36} In response, the city argues the trial court did not abuse its discretion in failing to grant an extension because Cade never filed a proper Civ.R. 56(F) motion for continuance. More specifically, the city contends Cade never submitted an affidavit in support of the motion as required by Civ.R. 56(F).

{¶ 37} In general, "Ohio appellate courts regularly presume that a trial court that grants summary judgment without expressly ruling on a pending Civ.R. 56(F) motion has overruled the Civ.R. 56(F) motion." *Perpetual Fed. Savs. Bank v. TDS2 Property Mgt., LLC*, 10th Dist. No 09AP-285, 2009-Ohio-6774, ¶ 9. Further, "the provisions in Civ.R. 56(F) are discretionary, not mandatory" and, "[a]bsent an abuse of discretion, the denial of a Civ.R. 56(F) motion will not be reversed." *Id.* at ¶ 11, citing *ABN AMRO Mtge. Group, Inc. v. Roush*, 10th Dist. No. 04AP-457, 2005-Ohio-1763, ¶ 23.

{¶ 38} Civ.R. 56(F) states:

> Should it appear from the affidavits of a party opposing the motion for summary judgment that the party cannot for sufficient reasons stated present by affidavit facts essential to justify the party's opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or discovery to be had or may make such other order as is just.

{¶ 39} Accordingly, "Civ.R. 56(F) requires the party seeking a continuance to submit an affidavit stating sufficient reasons why the party cannot present facts essential to justify the party's opposition to the summary judgment motion." *Perpetual Fed. Savs. Bank* at ¶ 13. In this respect, "[s]imply requesting a continuance in order to conduct discovery is not a sufficient explanation for why a party cannot present affidavits in opposition to the motion for summary judgment." *Id.* Further, "[w]here no affidavit is presented in support of a motion for extension under Civ.R. 56(F), a court may not grant an extension pursuant thereto." *Cook v. Toledo Hosp.*, 169 Ohio App.3d 180, 2006-Ohio-5278, ¶ 42 (6th Dist.), citing *Vilardo v. Sheets*, 12th Dist. No. CA2005-09-091, 2006-Ohio-3473, ¶ 29.

{¶ 40} In the present case, the record indicates the city filed its motion for summary judgment on December 12, 2022. On that same date, plaintiffs filed their "motion for extension of time to respond to city's motion for summary judgment." On December 27, 2022, the city filed a memorandum contra. In opposing the motion, the city argued plaintiffs "did not aver in an affidavit the particularized factual basis that explains why further discovery is necessary," and that "the signature of Plaintiffs' attorney on the motion is not tantamount to an affidavit." (Dec. 27, 2022 Memo Contra at 2.)

{¶ 41} In their motion for extension of time, neither Shinn nor Cade filed an affidavit. Instead, counsel for plaintiffs stated: "This Motion is submitted by the

undersigned, an officer of the Court, under oath and is therefore tantamount to an affidavit as required under Rule 56(F)." (Dec. 12, 2022 Pls.' Mot. for Extension of Time at 3.) Although containing the declaration "under oath," the motion (and signature of counsel) contains no notarization. *See, e.g., State ex rel. Coulverson v. Ohio Adult Parole Auth.*, 62 Ohio St.3d 12, 14 (1991) (in requesting continuance under Civ.R. 56(F), appellant "did not submit a valid affidavit for the court to consider" as it "is not sworn before anyone authorized to give oaths"). *See also Williams v. Townsend*, 6th Dist. No L-13-1036, 2013-Ohio-4837, ¶ 10 (motion for extension under Civ.R. 56(F) could not be construed as an affidavit as it "was not sworn before anyone authorized to give oaths, and is thus not a valid affidavit").

{¶ 42} This court has previously rejected the argument that "the signature of [appellant's] attorney on the motion for a continuance and memorandum in support of the motion makes the pleading the equivalent of an affidavit." *Muntzing v. Krause*, 10th Dist. No. 88AP-961, 1989 Ohio App. LEXIS 557 (Feb. 16, 1989). In the present case, appellant's unsworn motion for extension of time was not supported by a proper affidavit. Accordingly, because plaintiffs' request "lacked the required affidavit," the trial court "could not have acted upon" plaintiffs' request for an extension of time under Civ.R. 56(F). *Fair. v. Litel Communication, Inc.*, 10th Dist. No. 97AP-804, 1998 Ohio App. LEXIS 930 (Mar. 12, 1998).

{¶ 43} Cade's third assignment of error is not well-taken and is overruled.

{¶ 44} Under the fourth assignment of error, Cade asserts the trial court erred in failing to conduct a hearing on plaintiffs' motion seeking to disqualify the city attorney's office as counsel of record for the city. Cade contends plaintiffs sustained their burden of articulating grounds for disqualification under Prof.Cond.R. 1.7 as well as Prof.Cond.R. 3.7 and argues the trial court abused its discretion in denying the motion for disqualification by issuing a "cursory fiat Entry" without an evidentiary record. (Appellant's Brief at 27.)

{¶ 45} By way of background, on September 30, 2023, counsel for plaintiffs filed a "motion to disqualify Columbus City Attorney's Office as counsel of record for defendant city." In that motion, plaintiffs sought to disqualify three individuals as counsel of record for the city, i.e., Zach Klein, the city attorney; Dave Peterson, an assistant city attorney; and Darren Rigel, a city attorney representative.

{¶ 46} In the motion to disqualify, counsel for plaintiffs asserted the office of city attorney could not ethically serve as counsel for the city "at the same time that Office will testify about the oral contracts between the City and Mo Dioun/Firewater, and between the City and Linda Shinn." (Sept. 30, 2023 Mot. to Disqualify at 3.) The motion by plaintiffs' counsel relied on Prof.Cond.R. 1.7 and Prof.Cond.R. 3.7. On October 16, 2023, the city filed a memorandum in opposition to plaintiffs' counsel's motion. By entry filed on October 31, 2023, the trial court denied the motion to disqualify.

{¶ 47} On appeal, Cade argues that once plaintiffs filed their taxpayer action, the city faced "an insoluble ethical conflict" as to whether it should represent the city or defend the DPS. (Appellant's Brief at 23.) Cade premises such a conflict on his argument that, through his taxpayer action, he "stands in the shoes" of the city and that "his claim on behalf of the City * * * should have been prosecuted * * * by the Columbus City Attorney." (Appellant's Brief at 25.)

{¶ 48} An appellate court reviews a trial court's decision on a motion to disqualify counsel "for an abuse of discretion." *Frangioudakis v. Floran*, 11th Dist. No. 2022-L-083, 2023-Ohio-507, ¶ 41, citing *Lake Royale Landowners Assn. v. Dengler*, 11th Dist. No. 2022-P-0021, 2022-Ohio-2929, ¶ 17. In general, "[t]rial courts have the inherent power to disqualify an attorney from acting as counsel in a case when the attorney cannot or will not comply with the Ohio Rules of Professional Conduct and when such action is necessary to protect the dignity and authority of the court." *Reo v. Univ. Hosps. Health Sys.,* 11th Dist. No. 2018-L-110, 2019-Ohio-1411, ¶ 17, citing *Fordeley v. Fordeley*, 11th Dist. No. 2014-T-0079, 2015-Ohio-2610, ¶ 25, citing *Horen v. Toledo Pub. School Dist.*, 174 Ohio App.3d 317, 2007-Ohio-6883, ¶ 21 (6th Dist.). Disqualification, however, " ' "is a drastic measure which should not be imposed unless absolutely necessary" ' " due to the "potential use of the advocate-witness rule for abuse." *Horen* at ¶ 21, quoting *Waliszewski v. Caravona Builders, Inc.*, 127 Ohio App.3d 429, 433 (9th Dist.1998), quoting, *Spidey v. Bender*, 77 Ohio App.3d 17, 22 (6th Dist.1991)

{¶ 49} As noted, plaintiffs' counsel's motion to disqualify relied on Prof.Cond.R. 1.7 and Prof.Cond.R. 3.7. Prof.Cond.R. 1.7(a) states as follows:

> A lawyer's acceptance or continuation of representation of a client creates a conflict of interest if either of the following applies:

The representation of that client will be directly adverse to another current client;

There is a *substantial* risk that the lawyer's ability to consider, recommend, or carry out an appropriate course of action for that client will be materially limited by the lawyer's responsibilities to another client, a former client, or a third person or by the lawyer's own personal interests.

(Emphasis sic.) Prof.Cond.R. 1.7(a)(1) and (2).

{¶ 50} Under Prof.Cond.R. 3.7, an attorney is prohibited from "acting as an advocate at a trial in which the attorney is likely to be a necessary witness unless (1) the testimony relates to an uncontested issue; (2) the testimony relates to the nature and value of legal services rendered in the case; or (3) the disqualification of the attorney would work substantial hardship on the client." *Goebel v. Hopkins*, 12th Dist. No. CA2023-06-044, 2024-Ohio-194, ¶ 16. The burden of proving that such disqualification is necessary "falls upon the moving party," and "the burden of proving that one of the exceptions to Prof.Cond.R. 3.7 applies falls upon the attorney seeking to claim the exception." *Id.* at ¶ 17, citing *McCormick v. Maiden*, 6th Dist. No. E-12-072, 2014-Ohio-1896, ¶ 11. Further, "[b]ecause Prof.Cond.R 3.7 can be used for abuse, disqualification should be ordered only when necessary to avoid real harm." *In re Estate of Tuttle*, 6th Dist. No. E-19-008, 2019-Ohio-5363, ¶ 12, citing *Sherwood v. Eberhardt*, 9th Dist. No. 18CA011286, 2019-Ohio-4213, ¶ 17.

{¶ 51} Prof.Cond.R. 3.7 "is silent regarding whether an evidentiary hearing is required on a motion for disqualification." *Goebel* at ¶ 20, citing *Reo* at ¶ 28. It has been observed, however, "[t]he Ohio Supreme Court has 'never held that a court must hold an evidentiary hearing before ruling on every motion for disqualification.' " *Id.*, quoting *Dayton Bar Assn. v. Parisi*, 131 Ohio St.3d 345, 2012-Ohio-879, ¶ 15.

{¶ 52} We note that counsel for plaintiffs did not assert in his motion to disqualify that Cade, by virtue of bringing a taxpayer action, had an attorney-client relationship with the city attorney. In general, "[i]ssues that could have been raised and resolved in the trial court cannot be raised for the first time on appeal." *Quick v. Jenkins*, 7th Dist. No. 13 CO 4, 2013-Ohio-4371, ¶ 27, citing *Litva v. Richmond*, 172 Ohio App.3d 349, 2007-Ohio-3499, ¶ 18 (7th Dist.). Further, on appeal, Cade fails to cite any persuasive authority for the

proposition that plaintiffs' filing of a taxpayer action was sufficient to create such a relationship. To the extent Cade argues the trial court erred in denying the motion to disqualify on the basis of a purported attorney-client relationship, Cade has failed to show an abuse of discretion.

{¶ 53} Cade further contends the trial court erred in failing to disqualify the city attorney's office because the three individuals identified in the motion were necessary witnesses. Counsel for Cade argued in his motion to disqualify that "[t]he key issue in Plaintiffs' Complaint, Count Four, is whether * * * [the DPS] and Mo Dioun entered into an unlawful oral contract for the DPS to rebuild Little Turtle Way in the manner requested by Mo Dioun, in exchange for Dioun/Firewater Limited transferring land to the City to rebuild the roadway." (Sept. 30, 2023 Mot. to Disqualify at 3.) Counsel for Cade argued "it is more probable than not that Mr. Klein, Mr. Peterson, and Mr. Rigel will each be called by Plaintiffs to testify at the trial in this case." (Sept. 30, 2023 Mot. to Disqualify at 4.)

{¶ 54} In its response to the motion to disqualify, the city argued that Prof.Cond.R. 3.7 "does not even apply to Mr. Rigel because he is not an attorney," and that plaintiffs' counsel's motion failed to identify any relevant testimony he seeks to elicit from either Klein or Peterson, "much less that he could *only* secure that testimony from Mr. Klein or Mr. Peterson, and not from other witnesses." (Emphasis sic.) (Oct. 16, 2023 Memo in Opp. to Pls.' Counsel's Mot. to Disqualify at 6.)

{¶ 55} A necessary witness under Prof.Cond.R. 3.7 "is one whose testimony must be admissible and unobtainable elsewhere." *Goebel* at ¶ 18, citing *Brown v. Spectrum Networks, Inc.*, 180 Ohio App.3d 99, 2008-Ohio-6687, ¶ 14 (1st Dist.). Under Ohio law, "[a] party's simple declaration of an intention to call opposing counsel as a witness at trial is insufficient to establish the necessity for disqualification." *State v. Johnson*, 197 Ohio App.3d 631, 2011-Ohio-6809, ¶ 15 (6th Dist.), citing *Akron v. Carter*, 190 Ohio App.3d 420, 2010-Ohio-5462, ¶ 19 (9th Dist.). In this respect, "the attorney must be someone who has relevant, necessary information that no other witness can provide." *Id.*, citing *Papa Land Co, Ltd. v. Fragnoli*, 9th Dist. No. 08CA0062-M, 2009-Ohio-1299, ¶ 16. Further, " '[a] necessary witness is not the same thing as the "best" witness,' " and "[i]f the evidence that would be offered by having an opposing attorney testify can be elicited through other

means, then the attorney is not a necessary witness." (Citations omitted.) *Puritas Metal Prods., Inc. v. Cole*, 9th Dist. No. 07CA009255, 2008-Ohio-4653, ¶ 35.

{¶ 56} In the present case, while Count Four of the complaint alleged an oral agreement between Mo Dioun and the DPS, the complaint itself did not allege involvement by either Klein or Peterson in the purported agreement. As noted by the city, in plaintiffs' memorandum in opposition to the city's motion for summary judgment, plaintiffs argued that then-DPS Director Jennifer Gallagher, and other DPS employees, including "Project Director Kevin Thomas," played a role in the agreement. (Jan. 8, 2023 Memo in Opp. at 12.) Plaintiffs' memorandum included the contention that Thomas sent an email to a "DPS representative" in which "Thomas explained the terms and conditions of the unlawful oral agreement * * * between the City and Firewater." (Jan. 8, 2023 Memo in Opp. at 12.)

{¶ 57} As noted, a necessary witness "is one whose testimony must be admissible and unobtainable elsewhere." *Goebel* at ¶ 18. Upon review, the record in support of plaintiffs' motion to disqualify did not reflect that the testimony of the attorneys at issue was "necessary to establish the facts" surrounding the alleged agreement. *Crockett v. Crockett*, 10th Dist. No. 02AP-482, 2003-Ohio-585, ¶ 14. Stated otherwise, plaintiffs did not show that the testimony of Klein or Peterson was the only available source of information as to a purported agreement between Dioun and the DPS, i.e., there is no reason why the relevant facts "could not be established through the testimony of other witnesses." *Id.* Accordingly, we find no abuse of discretion by the trial court in failing to disqualify counsel and/or in failing to conduct an evidentiary hearing on the motion.

{¶ 58} Cade's fourth assignment of error is not well-taken and is overruled.

{¶ 59} Under the fifth assignment of error, Cade asserts the trial court erred in granting the city's motion for summary judgment. Specifically, Cade argues genuine issues of material fact exist as to his claim alleging violation of the Open Meetings Act, as well as to his taxpayer action and his breach of contract claim.

{¶ 60} Pursuant to Civ.R. 56(C), summary judgment shall be granted if the filings in the action, including pleadings and affidavits, "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." This court's review of a trial court's decision granting summary judgment "is de novo." *Bonacorsi v. Wheeling & Lake Erie Ry. Co.*, 95 Ohio St.3d 314, 2002-Ohio-2220, ¶ 24.

{¶ 61} We initially address Cade's challenge to the trial court's ruling on his Open Meetings Act claim. Cade argues the admissions of City Council President Shannon Hardin created a genuine issue of material fact precluding summary judgment on this claim. According to Cade, Hardin admitted that, prior to the public meeting (held on June 28, 2021), (1) he recommended that all members of city council pass Resolution 0107X-2021, (2) that "each non-objecting member communicated their agreement to pass that resolution by not objecting to it prior to the meeting," and (3) that it was understood if no member objected or requested removal of the resolution prior to the meeting, the resolution "will pass at that meeting." (Emphasis omitted.) (Appellant's Brief at 30.) Appellant maintains that Resolution 0107X-2021 was one of 46 items on the city council's consent agenda "approved en masse by a single vote." (Emphasis omitted.) (Appellant's Brief at 30.)

{¶ 62} In response, the city argues the trial court correctly granted summary judgment on Cade's claim. The city maintains that, contrary to Cade's contention, a consent agenda is not per se an Open Meetings Act violation. The city further argues that the statements cited by Cade attributed to Hardin do not describe a violation of the Open Meetings Act; rather, they explain how a consent agenda works.

{¶ 63} In addressing Cade's request for a declaratory judgment that the city violated the Open Meetings Act, the trial noted Cade "seeks a permanent injunction to compel Columbus to comply with the open meetings provisions in its Charter and the Revised Code," and that Cade "further alleges that Council's Public Service & Transportation committee privately met and agreed to approve Resolution 0107X-2021, Ordinance 0144-2022, and Ordinance 1820-2021." (Feb. 13, 2024 Decision & Entry at 4.) The trial court found that, while "Cade's pleadings recite relevant portions of various Council meetings, * * * nothing rises to the level of demonstrating to the Court that a violation of the Open Meetings Act occurred." (Feb. 13, 2024 Decision & Entry at 5.)

{¶ 64} As to Resolution 0107X-2021, "which was adopted as part of Council's consent agenda," the trial court noted that the resolution "was repealed." (Feb. 13, 2024 Decision & Entry at 7.) Further, regarding Cade's challenge as to the constitutionality of C.C.C. 111.15, the trial court deemed it unnecessary to decide the constitutional issue, concluding that, "even if [it] were to find it unconstitutional, it would not impact the validity

of Ordinance 1820-2021, Ordinance 0144-2022, or Resolution 0107X-2021." (Feb. 13, 2024 Decision & Entry at 8.)

{¶ 65} In general, the Open Meetings Act, R.C. 121.22, "requires public bodies in Ohio to conduct all deliberations on official business in meetings that are open to the public." *State ex rel. Hicks v. Clermont Cty. Bd. of Commrs.*, 171 Ohio St.3d 593, 2022-Ohio-4237, ¶ 1. The Supreme Court of Ohio has held that, "in accordance with common-law principles, the statutory provision authorizing citizens to sue public bodies for violations of the OMA clearly places the burden of proof, or at least the burden of persuasion, on the plaintiff." *Id.* at ¶ 11. Thus, "to receive relief, the plaintiff must prove a violation of the OMA," and "[t]here is no requirement for the public body to conversely prove that no violation occurred." *Id.* Further, "[u]nder the 'presumption of regularity,' in the absence of evidence to the contrary, courts will presume that public officers have properly performed their duties and acted lawfully." *Id.* at ¶ 21, citing *Toledo v. Levin*, 117 Ohio St.3d 373, 2008-Ohio-1119, ¶ 28.

{¶ 66} Cade's primary contention is that a consent agenda violates the Open Meetings Act, and plaintiffs argued, in their response to the city's motion for summary judgment, that city council violated the Open Meetings Act by passing Resolution 0107X-2021 as part of a consent agenda. Plaintiffs further argue that C.C.C. 111.15, addressing consent actions, is unconstitutional on its face and as applied.

{¶ 67} C.C.C. 111.15 states in part:

> The purpose of the city council agenda is to provide an outline for the orderly and efficient conduct of their weekly business meetings. The agenda sets forth the specific items of business and the order in which city council will consider them.
>
> A consent action creates a procedure, which when incorporated as part of the regular city council agenda, is designed to facilitate operational and noncontroversial matters on the agenda swiftly and efficiently. In accordance with Section 111.14 of the Columbus City Codes, and in consultation with the president of council, ordinances and resolutions to be identified as consent actions will be presented to council on the agenda. * * * Items identified as consent actions shall be read together as a group and approved with one (1) motion and one (1) roll call vote. The motion to approve or adopt shall be by reference to the assigned number of each ordinance or resolution so designated.

{¶ 68} The Supreme Court of Ohio has noted that "the Open Meetings Act does not appear to prevent [a body] from using consent agendas as a matter of law." *State ex rel. Ames v. Portage Cty. Bd. of Commrs.*, 165 Ohio St.3d 292, 2021-Ohio-2374, ¶ 19 (but noting that a body may not use a consent agenda in a manner that "constructively closes its public meetings" and attempts "an impermissible end run around the Open Meetings Act"). This court has also recognized that a consent agenda does not, per se, constitute a violation of the Open Meetings Act. *See Ames v. Columbus City Sch. Bd. of Edn.*, 10th Dist. No. 24AP-143, 2024-Ohio-3411, ¶ 23 (trial court did not err in granting summary judgment in favor of board of education in appellant's action alleging board violated the Open Meetings Act by using a consent agenda to approve payment of district's annual membership dues to entity).

{¶ 69} As noted, in arguing the trial court erred in granting summary judgment in favor of the city, Cade asserts that City Council President Hardin "admitted that by placing Res. 0107X-2021 on the Consent Agenda, he was recommending that all members of City Council approve the Resolution." (Appellant's Brief at 29.) Cade cites to testimony by Hardin during the trial court's hearing on the motion for preliminary injunction, held on November 23, 2021. During that hearing, counsel for plaintiffs questioned Hardin regarding a "Columbus City Council web page under the category 'What is a consent action?'" (Tr. Vol. 3 at 534.)

{¶ 70} During Hardin's testimony, counsel for plaintiffs (Harmon) and Hardin engaged in the following colloquy:

> Q. [COUNSEL:] And at the bottom, it says, "Who decides what is placed on the agenda as a consent action?"
>
> A. [HARDIN:] Yes.
>
> * * *
>
> Q. [COUNSEL:] In the next to last sentence, it says, "The Council President presents items identified as consent actions with the recommendation for approval by a single motion and vote."
>
> Do you see that language?
>
> A. [HARDIN:] Yes.

Q. [COUNSEL:] * * * I'm going to say, do you admit – and I'm referring to this language we just * * * read. Do you admit that by placing a resolution on the Consent Agenda, you are recommending that all members of City Council agree to approve * * * the resolution by a single motion and vote?

A. [HARDIN:] Yes.

Q. [COUNSEL:] Now, if you'll turn to the actual City Code 111.15, which is Exhibit L304 –

A. [HARDIN:] Got it.

* * *

Q. [COUNSEL:] Okay. The final sentence says, "A request by a member of Council to remove legislation from consent action shall automatically be deemed granted without the need for a motion and vote of the entire Council."

Do you see that language?

A. [HARDIN:] Yes.

Q. [COUNSEL:] So my question is: Do you admit that if no member objects to the placement of a resolution on the Consent Agenda, each non-objecting member is communicating their consent to your recommendation to vote an approval of the resolution?

* * *

A. [HARDIN:] Yes.

(Tr. Vol. 3 at 534-35.)

{¶ 71} As indicated, Cade contends the trial court "gave no weight to" the above "admissions" by Hardin. (Appellant's Brief at 29.) As noted by the city, however, the above statements do not describe a violation of the Open Meetings Act; rather, they merely explain how a consent agenda works and, as outlined above, the utilization of a consent agenda, standing alone, is not evidence of a violation.

{¶ 72} We also agree with the city that the cases cited by Cade in support, i.e., *State ex rel. Fairfield Leader v. Ricketts*, 56 Ohio St.3d 97 (1990); *State ex rel. Post v. Cincinnati*, 76 Ohio St.3d 540 (1996); and *White v. King*, 147 Ohio St.3d 74, 2016-Ohio-2770, are

distinguishable, and none of those cases involve the issue of an alleged violation of the Open Meetings Act based on use of a consent agenda. Specifically, in *Fairfield Leader*, the Supreme Court held that a private meeting between municipal officials and a prospective developer was in contravention of the Open Meetings Act, while in *Post*, the Supreme Court held that a city council's "back-to-back meetings, which, taken together, were attended by a majority of council members, violated the provisions of R.C. 121.22." *State ex rel. Post* at 542. Finally, in *White*, the Supreme Court held that discussions between school board members conducted in a series of e-mails, later ratified by the board at a public meeting, "may constitute a private, prearranged discussion of public business in violation of [the Open Meetings Act]." *White* at 81.

{¶ 73} In the present case, plaintiffs' complaint alleged that members of the city councils' Public Service and Transportation ("PS&T") committee "deliberated and reached a decision to sponsor and introduce Resolution 0107X-2021 onto the City Council Agenda." (Compl. at ¶ 35.) Plaintiffs further alleged that meetings of the PS&T committee and meetings of "the City Council 'All-Staff committee that preceded City Council approval of Res. 0107X-2021, Ord. No. 0144-2022, and Ord. No. 1820-2021" constituted "private agreements" to approve those ordinances and Resolution 0107X-2021, in violation of the Open Meetings Act. (Compl. at ¶ 79.)

{¶ 74} In support of its motion for summary judgment, the city submitted the affidavit of Lourdes Barroso De Padilla, who became the chair of the PS&T committee in January 2022. De Padilla averred that members of the PS&T committee "did not make any private agreements" to pass the ordinances at issue. (De Padilla Aff. at ¶ 5.) The city also submitted the affidavit of Michael Brown, who held the position of chief of staff of city council "in June 2021 and January 2022." (Brown Aff. at ¶ 2.) In his affidavit, Brown averred that elected members of city council "are not invited to attend, and rarely attend the all-staff meeting." (Brown Aff. at ¶ 4.) Brown further averred that he "attended the all-staff meeting that preceded the meeting of City Council on June 28, 2021," and that "[n]o attendee at the all-staff meeting that preceded the City Council meeting on June 28, 2021, made any agreement that members of City Council would approve Resolution 0107X-2021." (Brown Aff. at ¶ 6-7.) According to Brown, "[n]o elected members of City Council

attended the all-staff meeting that preceded the City Council meeting on June 28, 2021."
(Brown Aff. at ¶ 8.)

{¶ 75} As discussed above, the Open Meetings Act itself does not "prevent" the city's use of a consent agenda. *State ex rel. Ames* at ¶ 19. Further, based on this court's de novo review of the record on summary judgment, we agree with the trial court's determination that, taking Cade's allegations as true, including the "admissions" of Hardin, there are no genuine issues of material fact with respect to Cade's claim of an Open Meetings Act violation. Further, regarding Cade's constitutional challenge to C.C.C. 111.15, as noted by the trial court, Resolution 0107X-2021, which was adopted as part of city council's consent agenda, was repealed. Accordingly, we find no error by the trial court in declining to issue an advisory opinion on the constitutional issue raised. *See, e.g., Capital Care Network of Toledo v. Ohio Dept. of Health*, 153 Ohio St.3d 362, 2018-Ohio-440, ¶ 31 (citations omitted) (noting court " 'will not reach constitutional issues unless absolutely necessary,' " and recognizing "our long-standing practice disfavors issuing advisory opinions").

{¶ 76} We next address Cade's contention the trial court erred in granting summary judgment in favor of the city on his taxpayer action. In addressing the taxpayer action, the trial court determined it lacked jurisdiction over that claim, finding that Cade failed to give security for the costs of the proceeding. The court also addressed and rejected Cade's alternative argument that the taxpayer claim "survives on the merits," holding "the claim cannot be converted to a common law taxpayer action because Charter 74 (and R.C. 733.59) provides the exclusive avenue for a taxpayer to seek an injunction," and further holding that the subject of Cade's action, the alleged oral contract, "does not pertain to him, his property, or his alleged contract with Columbus." (Feb. 13, 2024 Decision & Entry at 6.)

{¶ 77} In challenging the trial court's decision, Cade argues a trial court may sua sponte waive security for costs where the matter has been pending for a period of time and where motions have been filed in the case. Cade maintains that he filed a motion requesting the trial court to waive bond with respect to the temporary restraining order and, at that point, "the taxpayer's requirement to post any further security for costs was satisfied." (Appellant's Brief at 34.) Cade further argues the city did not file a motion requesting the trial court to waive bond, nor did the city object when plaintiffs requested a waiver of bond.

Finally, Cade argues he filed suit both as a taxpayer representative and to protect his own individual contract rights.

{¶ 78} In response, the city asserts the trial court properly held Cade failed to post a bond security, a condition precedent for a trial court to have jurisdiction. The city further argues Cade's claim fails on the merits as there is no evidence the oral agreement he seeks to thwart ever existed.

{¶ 79} In general, "[t]here exist two types of taxpayer actions - one enumerated in statutory law and one found at common law." *E. Liverpool City School Dist. ex rel. Bonnell v. E. Liverpool City School Dist. Bd. of Edn.*, 7th Dist. No. 05 CO 32, 2006-Ohio-3482, ¶ 19. Under Ohio law, "a statutory taxpayer action may be brought on behalf of a municipality or a county and requires the taxpayer to secure the costs of the proceedings." *State ex rel. Perkins v. Medina Cty. Bd. of Commrs.*, 9th Dist. No. 19CA0051-M, 2020-Ohio-3913, ¶ 9, citing *Cincinnati ex rel. Ritter v. Cincinnati Reds, LLC*, 150 Ohio App.3d 728, 2002-Ohio-7078, ¶ 25 (1st Dist.). The Supreme Court of Ohio has made clear "the posting of security is a jurisdictional requirement to bringing a statutory taxpayer action." *State ex rel. Perkins* at ¶ 9, citing *State ex rel. Citizens for a Better Portsmouth v. Sydnor*, 61 Ohio St.3d 49, 54 (1991). In general, "it is incumbent upon the taxpayer to request that the trial court determine the required security." (Citations omitted.) *Id.* at ¶ 13

{¶ 80} In the present case, plaintiffs' complaint alleged a statutory taxpayer suit under R.C. 733.61, as well as under Sections 71, 72, and 74 of the Columbus City Charter. Section 74 of the Columbus City Charter addresses taxpayer's suits, and states in part: "No such suit or proceeding shall be entertained by any court until such request to the city attorney shall first have been made, nor until the taxpayer shall have given security for the costs of the proceeding." R.C. 733.59 similarly provides a taxpayer must provide "security for the cost of the proceeding."

{¶ 81} A review of the record supports the city's contention that Cade never provided security for the cost of the proceeding, nor did Cade file a motion requesting the court to set the costs or to waive the security. Cade argues, however, he previously filed a motion requesting the trial court to waive bond with respect to his request for a temporary restraining order. That request, however, was made pursuant to Civ.R. 65(C) (providing in

part that "[n]o temporary restraining order or preliminary injunction is operative until the party obtaining it gives a bond executed by sufficient surety").

{¶ 82} As noted by the city, the requirement of security for costs is not the same as the requirement for a bond to secure an injunction. It has been observed that the purpose of the bond requirement under Civ.R. 65(C) "is to secure to the enjoined party any damages he or she may suffer 'if it is finally decided that the order or injunction should not have been granted.' " *Miller-Valentine Constr., Inc. v. Iron Workers Local Union No. 55*, 138 Ohio App.3d 134, 136 (6th Dist.2000). By contrast, and as noted above, R.C. 733.59 requires the taxpayer to provide "security for the cost of the proceeding." Ohio courts have held that the payment of other fees, including "the payment of the initial filing fee did not satisfy the security requirement set forth at R.C. 733.59." *Bowshier v. Village of N. Hampton*, 2d Dist. No. 2001 CA 63, 2002-Ohio-2273, ¶ 27, citing *Sydnor* at 54; *Natl. Elec. Contrs. Assn., Inc. v. Mentor*, 108 Ohio App.3d 373, 381 (11th Dist.1995). *See also State ex rel. Perkins* at ¶ 12 (appellant's "reliance upon his filing fee to satisfy the jurisdictional requirement of security for the costs of the proceedings is misplaced" as it ignores Supreme Court of Ohio precedent "[w]ith regard to statutory taxpayer suits").

{¶ 83} Here, rather than requesting the trial court to determine the amount of security for costs for a statutory taxpayer action, Cade argued in his memorandum contra the motion for summary judgment that his earlier request for waiver of bond required for a temporary restraining order under Civ.R. 65(C) constituted a waiver of security for costs under R.C. 733.59 and Section 74 of the Columbus City Charter. Cade provides no authority for this position, nor does the case law. While there is authority for the proposition that a trial court may waive security for costs, we find no error by the trial court in failing to construe Cade's waiver request under Civ.R. 65(C) as a request to waive security for costs for the taxpayer suit. Rather, as concluded by the trial court, its earlier ruling "pertaining to a bond for the Temporary Restraining Order" is "not what is required as it relates to a taxpayer action." (Feb. 13, 2024 Decision & Entry at 6.)

{¶ 84} The trial court also addressed and rejected Cade's argument that the claim be converted to a common law taxpayer action. Cade argued in his memorandum in opposition to summary judgment that, "[e]ven if the Court were to find that Plaintiffs failed to file a second motion to waive bond, * * * Cade's taxpayer claim would still survive as a

proper common-law taxpayer action for which security is not required." (Pls.' Memo in Opp. to Mot. for Summ. Jgmt at 9.) Plaintiffs' complaint, however, alleged a statutory taxpayer action (under R.C. 733.61 and City Charter Sections 71, 72, and 74) and, as noted by the city, Cade never requested the court to convert the action. Further, the trial court determined that the subject of the action, i.e., the alleged oral contract, "does not pertain to [Cade], his property, or his alleged contract with Columbus." (Feb. 13, 2024 Decision & Entry at 6.) Upon review, we find no error by the trial court in granting summary judgment in favor of the city on Cade's taxpayer action.

{¶ 85} With respect to his breach of contract claim, Cade argues the city breached the contract by first issuing the payment required, and then clawing it back. Cade asserts his counsel made a reasonable attempt to mutually terminate the contract by agreement but the city refused to do so, at which time counsel for Cade sent a notice of breach. In response, the city argues the uncontradicted evidence shows Cade demanded his release from the land-sale contract and repudiated the agreement, and that the city agreed in writing to release him from his obligations.

{¶ 86} In addressing Cade's contract claim, the trial court concluded "a declaratory judgment will not terminate any controversy in this case because the parties mutually terminated the contracts." (Feb. 13, 2024 Decision & Entry at 7.) The trial court, noting that the city relied in support on Exhibits R ("Contract Release Request"), U ("Release Email") and V ("Contract Rescission Letter and Email"), observed that "[p]laintiffs do not address this argument in their briefing, nor do they direct the Court to any evidence to suggest there is an issue of material fact." (Feb. 13, 2024 Decision & Entry at 7.)

{¶ 87} As noted under the facts, on June 22, 2021, Cade signed a contract with the city granting the city a temporary construction easement in exchange for the sum of $3,000. By letter dated August 17, 2021, counsel for Cade informed the city that Cade (and Shinn) "have authorized me to request that the City voluntarily release them from any contractual obligations in this matter." (Ex. R, Dec. 12, 2022 City's Mot. for Summ. Jgmt.) On November 9, 2021, counsel for Cade sent a letter to the city asserting: "Because the City has not paid the purchase price, * * * I hereby advise and provide notice that the City is in breach of contract of the Real Estate Purchase Contracts with * * * Ms. Shinn, and Mr. Cade.

Each of my clients hereby terminate their Respective Real Estate Purchase Contracts with the City." (Ex. S, Dec. 12, 2022 City's Mot. for Summ. Jgmt.)

{¶ 88} By email dated February 25, 2022, the city attorney informed counsel for Cade: "The City will * * * be releasing Mr. Cade from the contract with the City." (Ex. U, Dec. 12, 2022 City's Mot. for Summ. Jgmt.) On March 17, 2022, the city attorney sent Cade a "Rescind Offer Letter," advising Cade the city "has determined that the acquisition of parcel 36 WD T is no longer necessary for the completion of this public improvement project." (Ex. V, Dec. 12, 2022 City's Mot. for Summ. Jgmt.) The letter further stated: "The City is hereby rescinding the offer made to you under the Notice of Intent to Acquire and Good Faith Offer dated June 11, 2021. Please consider this letter as your notice that the offer is now rescinded." (Ex. V, Dec. 12, 2022 City's Mot. for Summ. Jgmt.)

{¶ 89} As noted, the trial court found no genuine issue of material fact as to mutual abandonment of the contract between Cade and the city. In general, " ' "[a]bandonment is the intentional relinquishment of a known right," and "[a] contract will be treated as abandoned when the acts of one party inconsistent with the existence of the contract are acquiesced in (accepted) by the other party." ' " *Marks v. Raymond*, 2d Dist. No. 29065, 2021-Ohio-3375, ¶ 30, quoting *Barton v. Patterson*, 2d Dist. No. 79CA3, 1979 Ohio App. LEXIS 9504 (Aug. 14, 1979), quoting *Hodges v. Ettinger*, 127 Ohio St. 460, 463 (1934). Accordingly, " '[p]arties to a contract may mutually relinquish or abandon their rights under a contract when one party acts inconsistently with the existence of the contract and the other party acquiesces.' " *Id.*, quoting *Tucker v. Young*, 4th Dist. No. 04CA10, 2006-Ohio-1126, ¶ 24. Under such circumstances, " '[t]he contract is then dissolved and the parties are placed in their original positions, with no potential suit for breach of contract.' " *Id.*, quoting *Snell v. Salem Ave. Assocs.*, 111 Ohio App.3d 23, 31 (2d Dist.1996). Further, the mutual abandonment of a contract " ' "need not be express[ed], but can be inferred from the conduct of the parties and the surrounding circumstance." ' " *Id.*, quoting *Hunter v. BPS Guard Servs., Inc.*, 100 Ohio App.3d 532, 541 (10th Dist.1995), quoting *Dickson v. Wolin*, 18 Ohio Law Abs. 107, 1934 Ohio App. LEXIS 463 (9th Dist.1934).

{¶ 90} In the present case, there is no dispute that counsel for Cade, by letter dated August 17, 2021, informed the city that counsel was "authorized" to request that the city "voluntarily release them from any contractual obligations in this matter." The city

subsequently informed Cade it was "releasing Mr. Cade from the contract with the City," and the city then sent Cade the March 17, 2022 "rescind" letter, providing notice it was "rescinding the offer made to you." Here, the correspondence between counsel for Cade and the city establishes that Cade sought release from the contract and the city thereafter rescinded the offer, i.e., the conduct of the parties indicates a mutual assent to abandon their contractual obligations. Based on this court's de novo review, we find the record supports the trial court's determination that the conduct of the parties constituted an abandonment of the contract and that no genuine issue of material fact precluded summary judgment in favor of the city on Cade's contract claim.

{¶ 91} Accordingly, the trial court did not err in granting summary judgment in favor of the city on Cade's claims. Cade's fifth assignment of error is not well-taken and is overruled.

**IV. Conclusion**

{¶ 92} Based upon the foregoing, Cade's first, second, third, fourth, and fifth assignments of error are overruled, and the judgment of the Franklin County Court of Common Pleas is hereby affirmed.

*Judgment affirmed.*

LUPER SCHUSTER and BOGGS, JJ., concur.

————————————